**BRIGGS & STRATTON CORPORATION,**
A Wisconsin corporation, Plaintiff,

v.

**CONCRETE SALES AND SERVICES,**
et al., Defendants,

v.

**PEACH METAL INDUSTRIES, INC.,**
et al., Third–Party Defendants.

No. 5:95–CV–525–1 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Dec. 2, 1997.

---

**696**

Joan B. Cravey, Daniel S. Reinhardt, Atlanta, GA, for Briggs & Stratton Corporation.

Linwood Robert Lovett, J. Douglas Cowart, Macon, GA, for Concrete Sales and Services, Inc.

Linwood Robert Lovett, J. Douglas Cowart, Craig N. Cowart, Macon, GA, for Frances M. Coody and Timothy A. McCord.

Robert C. Norman, Jr., Macon, GA, for Turner Ashby McCord, Jr.

Alvin E. DeGraw, Jr., Fort Valley, GA, pro se.

Charles R. Adams, III, Ft. Valley, GA, Travis M. Trimble, Macon, GA, Susan S. Cole, Charles E. Cox, Jr., Macon, GA, for Peach County.

Edward H. Lindsey, Jr., Kathryn A. Cater, Atlanta, GA, for South Carolina Insurance Company.

Michael Morgan Smith, Macon, GA, for Peach Metal Industries, Inc.

William Michael Peterson, Warner Robins, GA, for Ann H. DeGraw.

Ann H. DeGraw, Fort Valley, GA, pro se.

Thomas W. Rhodes, Edward H. Wasmuth, Jr., Atlanta, GA, for Blue Bird Body Company and Cardinal Manufacturing Company.

F. Kennedy Hall, Macon, GA, Thomas T. Terp, J. Steven Justice, Cincinnati, OH, for Allied Chemical Corporation and Thiokol Corporation.

Michael Johnson, Shawn M. Willette, Joyce Mocek, Atlanta, GA, for Simplex Nails.

## ORDER

OWENS, District Judge.

Third–Party defendant AlliedSignal, Inc., has moved the Court to determine whether approximately 112 documents submitted for *in camera* review are privileged (Docket # 321). Counsel for third-party plaintiffs Frances M. Coody and Timothy A. McCord, as Trustees for the Irrevocable Trust of Turner Ashby McCord, Jr., mistakenly produced the subject documents in response to Allied-Signal's discovery requests. AlliedSignal contends that any privilege asserted as to the documents was waived by the circumstances surrounding their production. AlliedSignal has also raised ethical concerns about the nature of some of the documents, which it has brought to the attention of the Court pursuant to Georgia's Code of Professional Responsibility, DR 7–102(B)(2). Plaintiff Briggs & Stratton has also indicated by letter its concerns, based upon a list of the confidential documents filed with AlliedSignal's motion, that third-party plaintiffs have intentionally withheld discoverable information from plaintiff without including them on a privilege log. The documents in question have been placed under seal pending a hearing and *in camera* review.

An evidentiary hearing was held on November 17, 1997. The court heard testimony on behalf of both AlliedSignal and the third-party plaintiffs. The evidence revealed that J. Steven Justice, AlliedSignal's attorney from the Cincinnati law firm of Taft, Stettinius & Hollister, came to Macon, Georgia, on January 14, 1997, to inspect documents of the third-party plaintiffs located at the law offices of their counsel, Lovett, Cowart and Ayerbee ("the Lovett firm"). The purpose of the inspection was to determine whether any of the documents stored at the Lovett firm were responsive to AlliedSignal's discovery requests. Upon arrival Mr. Justice was shown approximately 15 banker's boxes of documents ("the PMI files") which were located stacked along the wall of a conference room. Mr. Justice observed the volume of the documents and the fact that many of them were water-damaged and covered with mold as a result of the 1994 flood in Macon. He thereupon requested the assistance of

Mr. Addison Ricks, a paralegal from the law offices of Hall, Bloch, Garland & Mayer, to help him sort through the boxes. Mr. Justice and Mr. Ricks spent two days reviewing the documents. When they found relevant documents, they tagged them with yellow Post–It notes. In some cases entire boxes were tagged for copying, while in other instances specific documents were tagged and placed on top of their respective boxes. Upon conclusion of the inspection Mr. Justice and Mr Ricks made arrangements for an outside copy service to pick up the tagged documents for copying. Mr. Justice returned to Cincinnati at the close of the second day, January 15.

On January 16 Mr. Ricks returned alone to the Lovett firm to meet a representative of Digital Data Services to obtain a quote for copying. When Mr. Ricks arrived he was informed by a law clerk that the boxes containing the PMI files and documents had been moved out of the conference room and placed around the law clerk's office doorway in order to make room to conduct a deposition in the conference room. Some of the stacks of documents which Mr. Justice and Mr. Ricks had earlier placed on top of the boxes were now located back inside the boxes, and some of the boxes which had been segregated for copying had been mixed back with the other boxes. Mr. Ricks advised the law clerk that it would be necessary for him to sort through the boxes again to resegregate the materials marked for copying. After receiving such permission from the law clerk Mr. Ricks began to re-examine the documents where they were placed surrounding the doorway and in the hallway outside the office. When Mr. L. Robert Lovett saw Mr. Ricks in the hallway, he objected to his being there and commented that he did not want the documents to be sent out for copying and that AlliedSignal should pay someone on the Lovett firm's staff to copy the records. Mr. Ricks called Mr. Justice and informed him about Mr. Lovett's reluctance to allow the documents to leave the premises.

In this same time frame the copy service representative arrived, and Mr. Ricks was able to obtain a quote from him for doing the copying work. Shortly thereafter Mr. Douglas Cowart, then with the Lovett firm, observed the situation and recommended that the boxes be moved again into a library across the hall from the law clerk's office. Mr. Ricks moved the boxes assisted by either Mr. Cowart or the law clerk. He continued to sort through the boxes in an attempt to resegregate the materials marked for copying, a task which he testified was difficult because there had been old Post–It notes left on the documents by previous reviewers. After his review Mr. Ricks again set aside the materials to be copied. As before, the documents included in some cases whole boxes and in other cases documents pulled from the boxes and placed on top. The segregated items were placed against the left side of the library walls to await pick-up by the copying service.

Mr. Ricks testified that the materials he reviewed on the third day appeared to be those that he and Mr. Justice had originally reviewed the first two days, and that on no occasion on the third day did he remove items from the original boxes and place them in separate boxes. Moreover, both Mr. Ricks and Mr. Justice testified they did not remember seeing any file or documents during their original inspection which alerted them that they might be viewing confidential or privileged information. The documents remained against the wall in the library of the Lovett firm for approximately four days before Digital Data Services removed them for copying purposes.

At the end of January 1997 Mr. Justice received three large boxes from Digital Data Services containing the copied documents. Shortly thereafter he was notified that the Lovett firm claimed that confidential and privileged documents had inadvertently been produced to AlliedSignal. Mr. Justice requested that the Lovett firm provide a list of the privileged documents. He received a letter from Mr. Lovett accompanied by a list of 125 confidential or privileged documents. The letter did not indicate that the 125 documents were located together or that they were in one bundle. When a brief initial search by Mr. Justice failed to disclose the privileged documents in one bundle or group, counsel for AlliedSignal offered to search for

the documents among the three boxes if the third-party plaintiffs were willing to pay for a paralegal's time in doing so. The third-party plaintiffs were unwilling to assume responsibility for paying a paralegal. After Mr. Lovett again requested the return of the documents, Mr. Justice eventually asked his secretary to search through the copied documents in her free time in an attempt to locate the privileged documents. The secretary was able to locate 112 of the 125 documents corresponding to Mr. Lovett's list. Mr. Justice reviewed the documents and became concerned that they raised the spectra of possible fraudulent transactions, which resulted in the filing of the present motion.

A great deal of testimony was presented concerning how the privileged documents came to be included among the documents sent out to be copied. Douglas Cowart, formerly with the Lovett firm, testified that the documents produced in response to Allied-Signal's request had originally been retrieved from the PMI site, put into folders and catalogued into 20 banker's boxes. During the 1994 flood the documents became damaged, and Mr. Cowart took them to his home and attempted to dry them. After the drying effort all the PMI files were located in only 15 boxes. The documents voluntarily produced to AlliedSignal in these 15 boxes were in manila folders and were in an extremely deteriorated condition as a result of the flood damage, while the privileged documents were in expandable folders and contained attorney notes on yellow sheets. According to Mr. Cowart, the privileged documents were not located with the PMI files but were separately located in a separate box of South Carolina Insurance Company files marked "SCIC."

Mr. Cowart stated that on the day of the copying he took the PMI files, moved them into the front conference room, and went through them to make sure nothing privileged was included. At that time the privileged documents were not among the PMI files. He indicated that he looked through every paper, which was his practice whenever the documents were produced for inspection. He further stated that after Mr. Justice completed his investigation he examined the documents again to see what had been tagged for copying. After Mr. Justice left at the end of the second day the boxes were moved into the law clerk's office and placed on the right side of the office by the door. None of the boxes were placed on the left side of the office, where the files pertaining to South Carolina Insurance Company were located. Mr. Cowart did not undertake a third check of the documents after Mr. Ricks left on the third day after arranging for pick-up by the copying service, nor did he do so at any time during the three—or four-day delay before the copying company arrived. After the copying had been completed Mr. Cowart again went through the boxes and at that time saw an expandable folder from the SCIC box among the deteriorated documents. The Lovett firm having ordered its own set of the copied documents from Digital Data Services, Mr. Cowart testified that he checked the copies and noted that the privileged documents from the SCIC file had been copied and that they were located all together about halfway through the copied documents.

The court has conducted a review of the documents at issue and has determined that they are clearly privileged documents which include attorney handwritten notes, letters from counsel to client, legal memoranda, and outlines of legal strategy. The Lovett firm also produced for the court's *in camera* review a banker's box marked "SCIC" in which it contends the originals of the privileged documents were located at the time of Mr. Justice's review. A limited review of the "SCIC" box revealed a number of the originals of the copied documents. The court did not undertake an exhaustive review of every paper in the "SCIC" box to find the original of each of the 112 documents for which privilege is claimed. The originals which were easily located on the limited review reveal that at least some of the documents are located consecutively within the "SCIC" box rather than randomly interspersed throughout the box, although there do not appear to be as many as 112 located together.

From the testimony presented it seems unlikely that the privileged documents were located within the 15 banker's boxes in the Lovett firm's conference room during the two

days Mr. Justice conducted his examination. Neither Mr. Cowart, Mr. Justice, or Mr. Ricks indicated that they observed any documents which appeared to be confidential during their searches. Furthermore, testimony revealed that numerous other individuals had previously engaged in their own search of the original documents and had failed to find the privileged items. The privileged items could have become intermingled with the documents which had already been selected for copying when the boxes of documents were moved from the conference room to the law clerk's office, or, most likely, when they were moved for the second time from the law clerk's office to the library. Although testimony indicated that the "SCIC" boxes were in a separate area in the law clerk's office, it is not difficult to imagine how a mistake could have been made. Whether the original documents were all located together is not of paramount importance to a resolution of this issue, for the responsibility for the unintended copying of the documents must lie with the Lovett firm. By failing to exercise sufficient control over the search and copying procedures, the Lovett firm was ultimately responsible for the inadvertent release of privileged documents located on their own premises.

■ Assessing the ultimate responsibility for the release of the documents does not resolve the primary issue, which is whether a waiver has occurred. AlliedSig...al contends that the third-party plaintiffs have waived the privileged status of the documents and that they should be subject to discovery by all parties. Courts have used three standards in determining whether inadvertent disclosure of privileged documents constitutes a waiver. The strict approach of *In re Sealed Case*, 877 F.2d 976, 980 (D.C.Cir.1989) holds that any disclosure, even an inadvertent one, constitutes a waiver. The lenient approach of *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 753 F.Supp. 936, 938 (S.D.Fla. 1991), requires a deliberate act or intentional disclosure before a privilege is waived. The majority of federal courts apply a balancing test requiring a case-by-case analysis, *e.g., United States v. Pepper's Steel & Alloys, Inc.*, 742 F.Supp. 641 (S.D.Fla.1990). *Pepper's Steel* adopted the relevant circum-stances test of *Parkway Gallery v. Kittinger*, 116 F.R.D. 46, 50 (M.D.N.C.1987), which requires the court to weigh the following:

(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production;

(2) the number of inadvertent disclosures;

(3) The extent of the disclosure;

(4) any delay and measures taken to rectify the disclosures; and

(5) whether the overriding interests of justice would be served by relieving a party of its error.

*Pepper's Steel*, 742 F.Supp. at 643. The case-by-case approach is the better approach and will be adopted in this court.

■ Although responsibility for the disclosure is that of the Lovett firm, this fact does not resolve the issue of whether the precautions taken to prevent such disclosure were reasonable. Mr. Cowart testified, and produced time records indicating, that he had reviewed the contents of the 15 banker's boxes before submitting them for AlliedSignal's examination. He undertook his first examination even though none of the previous parties who had had access to the boxes had discovered privileged materials. Mr. Cowart examined the documents a second time in order to determine which documents had been set aside for copying. Ideally, the documents could have been examined a third time during the three or four days they remained in the library awaiting pick-up by Digital Data Services. It cannot be said that the failure to make a further examination of the documents was unreasonable, however, particularly when there was nothing to indicate to Mr. Cowart or cause him to suspect that an intermingling had occurred. Where voluminous files and records are stored, such mistakes are apt to occur from time to time for any number of causes.

The second and third factors—the number of inadvertent disclosures and the extent of the disclosures—likewise do not support a waiver in this case. Although the actual number of 112 privileged documents among approximately 2600 disclosed documents is

quite high, all indications are that they were inadvertently located with the documents set aside for copying in the final move of the bankers' boxes from the second location of the law clerk's office into the third location of the library. It would make little sense to penalize the third-party plaintiffs because of the number of privileged documents accidentally commingled during a move from one room to another, while at the same time holding that counsel's efforts to prevent such disclosure were reasonable.

Moreover, the extent of the disclosures does not warrant a waiver of privilege. AlliedSignal expresses concern over a relative few of the withheld documents. One possible interpretation of these documents could justify a suspicion that fraudulent conveyances may have occurred in the past. A review of these specific documents and the context in which they appear to have been written at the time does not persuade this court that AlliedSignal's interpretation is likely to be the correct one. Although the possibility of ethical violations may be inferred from certain documents, the inference is a weak one in the court's view and is insufficient cause to justify a waiver of the attorney-client privilege.

Counsel for third-party plaintiffs took reasonable measures to prevent disclosure of the privileged documents without unnecessary delay. Upon discovery that the privileged documents had somehow been copied, Mr. Lovett requested that the documents be returned. The Taft law firm in Cincinnati initially indicated a willingness to do so, although apparently not without reserving its rights to read the documents and to seek further direction from the court. Although AlliedSignal takes the position that the Lovett firm's refusal to pay for the services of a paralegal should work against it to bolster a finding that there was a waiver of privilege, the court is unwilling to hold that the Lovett firm was required to agree to pay for a paralegal's services as a condition of avoiding a finding of waiver. The reasonable promptness of the request for return of the documents, the initial willingness of the Taft firm to do so, and Mr. Lovett's repeated requests that the documents be returned are indica-

tive of reasonable, if not aggressive, attempts to prevent the documents' disclosure.

Finally, the court believes that the overriding interests of justice would be served by relieving the Lovett firm of its error. It would be contrary to the interests of justice to require the third-party plaintiffs to waive documents otherwise entitled to the attorney-client privilege because of the Lovett firm's negligent failure adequately to maintain the integrity of the documents under the circumstances of this case.

In a letter to the court dated October 21, 1997, the Lovett firm indicated that the Trust would agree for plaintiff Briggs & Stratton Corporation and/or Allied Signal, Inc., to audit at their expense the finances of the Trust using a local accountant acceptable to all parties, provided that the Trust has access to any information, reports, or audits. Such a proceeding appears to be both reasonable and advisable as a means of alleviating all parties' concerns that the Trust may have engaged in fraudulent conveyances. AlliedSignal and/or Briggs & Stratton are encouraged to avail themselves of this procedure and to keep the court advised of any efforts made in that regard. In the same letter the Lovett firm agreed to respond to Briggs & Stratton's Interrogatories Nos. 7 and 8 and the corresponding request for production of documents. The court hereby directs that these responses be made. It is noted that Briggs & Stratton's motion to compel discovery from the third-party plaintiffs is before the court and that the third-party plaintiffs have resisted such discovery prior to judgment. The remaining discovery issues will be resolved without reference to the privileged documents unless further orders of the court indicate otherwise.

In summary, it is this court's ruling that the 112 documents which were erroneously produced to AlliedSignal are privileged documents and that they are not to be utilized at any point in the proceedings of this case without further orders. Counsel for AlliedSignal shall return to the Lovett firm all copies of the subject documents which remain in their possession. The Lovett firm shall respond to plaintiff's Interrogatories Nos. 7 and 8 and the corresponding request

for production of documents within ten (10) days from date hereof.