SNAP–ON INC., Snap–on Technologies, Inc., and John Bean Co., Plaintiffs,

v.

HUNTER ENGINEERING CO., Defendant.

No. 98–C–369.

United States District Court, E.D. Wisconsin.

Dec. 3, 1998.

966

Raymond P. Niro, Niro, Scavone, Haller & Niro, Chicago, IL, Amy S. Owen, Miles & Stockbridge, McLean, VA, for Plaintiffs.

Harold A. Laufer, Davis & Kuelthau, Milwaukee, Peter Lovato, III, Peterson & Ross, Chicago, IL, Dean L. Franklin, Nicholas B. Clifford, Thompson Coburn, St. Louis, MO, Craig C. Reilly, Richards McGettigan Reilly & West, Alexandria, VA, for Defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Plaintiffs Snap–On Incorporated ["Snap–On Inc."], Snap–On Technologies, Inc. ["Snap–On Technologies"] and John Bean Company ["John Bean"] brought this patent infringement action against Hunter Engineering Company ["Hunter"]. This is the court's decision and order regarding the following motions:

1) Defendant's second motion to transfer,

2) Plaintiffs' motion to stay consideration of defendant's second motion for transfer,

3) Plaintiffs' motion for default judgment,

4) Defendant's motions to dismiss or, in the alternative, for a more definite statement,

5) Motions by both the plaintiffs and the defendant for protective orders, and

6) Plaintiffs' motion for an order concerning the attorney-client privilege.

### I. Factual and Procedural Background

According to the first amended complaint, the plaintiffs hold the rights to a number of patents involving certain methods and machines used to balance and align the wheels of automobiles. (Am.Compl.¶¶ 1, 7–17.) The plaintiffs allege that Hunter, a worldwide maker and seller of automotive service equipment, infringes the patents in question when it makes, uses or sells certain automotive equipment. (Am.Compl.¶¶ 4, 8–17.) The plaintiffs also claim that Hunter induces its customers to infringe certain of the patents in question by selling the offending equipment to them. (Am.Compl.¶ 18.) Some of these acts allegedly occurred in this district. (Am.Compl.¶¶ 4, 18.) The plaintiffs seek damages, an injunction and other relief based

on the defendant's intentional "direct infringement, contributory infringement and inducement to infringe". (Am. Compl. page 6.)

Defendant Hunter is a Missouri corporation (Am.Compl.¶ 3) and has its headquarters there. (*See* Second Motion to Transfer.) Plaintiff Snap–On Inc., the parent company of plaintiffs Snap–On Technologies and John Bean, is a Delaware corporation with a principal place of business in Kenosha, Wisconsin. (Am. Compl. ¶ 6 .) Snap–On Technologies is an Illinois corporation with a principal place of business in Crystal Lake, Illinois. (Am.Compl.¶ 6.) John Bean is incorporated in Wisconsin, with a principal place of business in Conway, Arkansas. (Am.Compl.¶ 6.)

This action began on February 20, 1998, when the plaintiffs filed a complaint against Hunter and several other defendants in the federal district court for the Eastern District of Virginia. At Hunter's request, the court in Virginia severed the plaintiffs' claims against Hunter and transferred those claims here pursuant to 28 U.S.C. § 1404 ("Change of venue"). Although the Eastern District of Missouri was Hunter's first choice of venue, it had alternatively requested transfer to one of several other midwestern districts, including this one.

Shortly after the transfer to this district, Hunter brought a related action against the plaintiffs in the federal court for the Eastern District of Missouri. The court in Missouri found that venue was improper there because it did not have personal jurisdiction over defendant Snap–On Technologies (a plaintiff in the instant action). The court transferred Hunter's lawsuit to this district because the present case, which involves a number of the same patents, was already pending here. Thus, both the present case and Hunter's related action (case number 98–C–837) are before this court. Because the cases are not consolidated, this decision only deals with the motions in case number 98–C–369. Related motions in case number 98–C–837 will be addressed in a later opinion.

## II. Analysis

### A. Motions Regarding Transfer

Hunter has filed a second motion to transfer this case to the Eastern District of Missouri. The plaintiffs have requested that the court stay consideration of that motion until the district court in Missouri rules on the plaintiffs' transfer motion in the related litigation in Missouri. The plaintiffs' motion to stay will be denied as moot, since the court in Missouri has since transferred its case to this district.

I will also deny Hunter's second motion for transfer. Hunter argues that Wisconsin is an inconvenient forum because all material witnesses and documents are in Missouri and Arkansas, not here. Hunter also claims that the only plaintiff with any connection to Wisconsin, Snap–On Inc., does not have any rights in the patents and therefore must be dismissed on standing grounds. Even assuming these arguments are correct, Hunter's motion to transfer should be denied for two reasons.

First, the court in Virginia has transferred this case to this district; Hunter has not sought relief from that order, nor does the record provide a basis for revisiting the transferor court's ruling. If venue is improper here, as Hunter now argues, then Hunter should not have suggested that the court in Virginia transfer the case here, even as an alternative to a transfer to the Eastern District of Missouri. Although Hunter claims that the circumstances have changed since it first moved for a transfer, Hunter could have made substantially the same arguments it makes now when it argued its first motion to the court in Virginia.

Second, Hunter specifically requests transfer to the Eastern District of Missouri. However, in Hunter's related Missouri action, the court ruled that Missouri was an improper venue, and transferred that case to this district. Transferring this case to Missouri would be inconsistent with that ruling, and it would foreclose the disposition of Hunter's related lawsuit in the same district.

### B. Plaintiffs' Motion for Entry of a Default Judgment

The court has considered the plaintiffs' motion for a default judgment. It will be denied without discussion because it is clearly devoid of merit.

## C. Hunter's Motions to Dismiss or for a More Definite Statement

Hunter filed a motion to dismiss while this action was pending in the Eastern District of Virginia. The court in Virginia denied the motion without prejudice when it transferred the case here. Hunter renewed the motion on April 24, 1998 and filed an amended motion to dismiss or, in the alternative, for a more definite statement on May 26, 1998. After briefing on the amended motion was completed, the plaintiffs filed their first amended complaint. Hunter has filed a motion to dismiss the first amended complaint or, in the alternative, for a more definite statement. The latest motion incorporates the arguments made in support of Hunter's previous motions attacking the original complaint. Accordingly, the court will dismiss the prior motions as moot and turn to the motion to dismiss the first amended complaint or, in the alternative, for a more definite statement.

Hunter makes three arguments in support of the motion to dismiss. It first argues that two of the three plaintiffs lack standing to bring this suit. Second, Hunter claims that the plaintiffs have not sufficiently alleged the necessary elements of contributory infringement and inducement to infringe. Third, Hunter contends that two of the new claims in the amended complaint are barred because the plaintiffs had to bring them as compulsory counterclaims in Hunter's related action (case no. 98–C–837), which is also pending in this court.

### 1. Standing

Hunter argues that the amended complaint does not sufficiently plead that each of the plaintiffs have the type of ownership rights needed to confer standing upon them. In particular, Hunter claims that John Bean, which was a mere licensee when the action began, and especially Snap–On Inc., which was never an owner of the patents or even a licensee, do not have standing to bring this action. Hunter concedes in its briefs that Snap–On Technologies, as the owner of the patents, has standing to sue.

Several settled principles apply to an analysis of standing in a patent infringement action. Under the terms of the relevant statute, only a patentee may sue for patent infringement. 35 U.S.C. § 281 (1994) ("A patentee shall have remedy by civil action for infringement of his patent."); *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1483 (Fed.Cir.1998). A "patentee" is the party to whom the patent issued or any successors in title to the patent. 35 U.S.C. § 100(d) (1994); *Textile Productions*, 134 F.3d at 1483–84. A licensee is not entitled to bring suit in its own name unless it holds all substantial rights under the patent. *Id.* at 1484. Such a licensee is in effect an "assignee" and therefore a patentee. *Id.* An exclusive licensee who holds less than all substantial rights may only sue as a co-plaintiff with the patentee, unless the exclusive licensee must sue in its own name to prevent "an absolute failure of justice." *Id.* A non-exclusive or bare licensee has no standing at all. *Id.*

In keeping with these rules, each of the plaintiffs must have been, at some point during the relevant time period, either a patentee or an exclusive licensee. The allegation of ownership in the amended complaint, which was not in the original complaint, states: "Plaintiffs own all rights, title and interest in the patents in suit, including exclusive license rights." (Am.Compl.¶ 1.) This allegation is vague, perhaps purposefully so, given the plaintiffs' awareness of Hunter's standing arguments when it drafted the amended complaint. At a minimum, the allegation establishes that at least one of the plaintiffs has standing. It does not, however, make clear that each one of them is or was the patentee or exclusive licensee of the patents in suit.

Notwithstanding this lack of specificity, the allegation would seem to be sufficient to defeat a motion to dismiss based solely on the argument that the complaint fails to state a claim. A dismissal under Rule 12(b)(6) is proper only where it is clear that the plaintiff can prove no set of facts consistent with the allegations of the compl. that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Looking only at the face of the complaint, it appears possible that the plaintiffs could prove that each of them were patentees or

exclusive licensees at some point during the relevant time period.

The difficulty here, however, is that Hunter does not simply argue that the allegation of ownership is insufficient. Hunter also affirmatively asserts that (1) John Bean was a mere licensee prior to the filing of the first complaint and (2) Snap–On Inc. was never a patentee or exclusive licensee. As to the first assertion, it does not provide a basis for dismissing John Bean. Hunter points out that John Bean was a bare licensee when the original complaint was filed and only became a purported exclusive licensee about a month later. This might have been a reason for dismissing the original complaint, but the plaintiffs have since amended their complaint. (*See* Am. Compl. ¶ 1, alleging that plaintiffs have "exclusive license rights".) Hunter does not claim that John Bean was not an exclusive licensee when the amended complaint was filed. *See Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 310–11 (D.Del.1995) (defect in standing can be remedied through amendment of the pleadings). The court will deny Hunter's motion insofar as it seeks dismissal of John Bean.

█ Hunter's second assertion, on the other hand, raises more difficult questions. Hunter claims that the patents were assigned from FMC Corporation directly to plaintiff Snap–On Technologies, a subsidiary of Snap–On Inc. Snap–On Inc., the defendant claims, was never a patentee or exclusive licensee. If this is true, Snap–On Inc. would lack standing to sue. *Textile Productions*, 134 F.3d at 1483–84. The problem is that Hunter's assertion, which does not necessarily contradict the amended complaint, relies upon matters outside the pleadings. Generally, when deciding a Rule 12(b)(6) motion the court must either exclude such matters or, if it wishes to consider them, convert the Rule 12(b)(6) motion to a motion for summary judgment and grant the parties time to submit the supporting materials described in Rule 56. Fed.R.Civ.P. 12(b). An exception to this rule is that the court may take judicial notice of matters of public record. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir.1994). The extrinsic matters relied upon by Hunter include records from the U.S. Patent and Trademark Office and the decla-

ration of an attorney for Snap–On Inc. I will consider the patent office filings because they are public records. *See Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 664 n. 12 (7th Cir.1995) (taking judicial notice of patent in a trade dress infringement case). As to the declaration, I will disregard it rather than convert Hunter's motion to a motion under Rule 56.

█ The patent records suggest that Snap–On Inc. was never a patentee or exclusive licensee of the relevant patents. Although this alone would not be conclusive on a motion to dismiss, the plaintiffs practically admit in their briefs that Snap–On Inc. was never a patentee or exclusive licensee. They admit, for example, that FMC Corporation assigned all of its rights in the patents directly to Snap–On Technologies. The plaintiffs also do not deny that Snap–On Inc. was never a patentee or exclusive licensee. Instead, the plaintiffs avoid this central question by arguing that they had unspecified "rights" in the patents for an unspecified "period of time." They also claim that Snap–On Inc. was granted a right to sue and retained a reversionary interest in patent rights assigned to Snap–On Technologies. However, neither of these rights confers standing. *See Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1034 (Fed.Cir.1995) (right to sue clause has no impact on standing); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed.Cir.1991) (retention of reversionary right did not show an intent not to transfer all substantial rights). Even more evasive are the plaintiffs' arguments that keeping Snap–On Inc. in this case will avoid "future standing disputes" and "benefits the defendants".

In sum, the factors discussed above—the vagueness of the allegation of ownership, public patent records, and the plaintiffs' failure to even suggest that they can show that Snap–On Inc. was ever a patentee or exclusive licensee—considered together, compel the conclusion that the plaintiffs cannot prove a set of facts that would confer standing on Snap–On Inc. I will therefore dismiss Snap–On Inc. from this action, without prejudice.

### 2. Contributory infringement and inducement to infringe claims

■ Hunter argues that the plaintiffs' contributory infringement and inducement to infringe claims must be dismissed because they fail to allege knowledge or intent. Hunter's argument fails because the amended complaint states that the defendant's actions were "willful and deliberate". (Am. Compl.¶ 20.) This allegation is sufficient. *See* Fed.R.Civ.P. 9(b) ("intent, knowledge, and other condition of mind of a person may be averred generally."). The court will deny Hunter's motion as to the contributory infringement and inducement to infringe claims.

### 3. Plaintiffs' new patent infringement claims

The defendant argues that two of the new claims in the amended complaint are barred because they were compulsory counterclaims in Hunter's related action (98–C–837), which is pending in this court. The plaintiffs have suggested (without making a motion) that the court consolidate Hunter's case with this one. It appears that consolidation might render Hunter's argument moot. I am not prepared to entertain Hunter's argument before I decide the consolidation issue. Accordingly, Hunter's motion with respect to the two new claims will be denied, without prejudice to its being renewed in the event the court decides not to consolidate Hunter's case with the instant action.

### 4. Hunter's alternative motion for a more definite statement

■ Hunter's motion for a more definite statement will be denied because the amended complaint is not so vague that Hunter cannot be expected to be able to answer it. *See* Fed.R.Civ.P. 12(e). To the contrary, the amended complaint states sufficient facts to give Hunter ample notice of the plaintiffs' claims. Hunter's ability to defend against these claims is evident from its motion practice in this case and its commencement of related litigation against the plaintiffs. To grant Hunter's motion for a more definite statement would be contrary to the concept of notice pleading embodied in the Federal Rules of Civil Procedure. *See, e.g.,* Fed.R.Civ.P. 8(a) ("short and plain statement of the claim") & (e) ("pleading to be concise and direct").

The court will also deny Hunter's request that the plaintiffs be required to replead each of their claims in separate counts. Requiring the plaintiffs to separately allege each of their three related claims of patent infringement, which claims arise out of similar occurrences, would only make the complaint unduly long and repetitive.

### D. Motions for Protective Orders

The defendant and the plaintiffs have made competing motions for a protective order which would limit the manner in which confidential trade secrets and sensitive commercial information would be disclosed. The record demonstrates that discovery in this patent infringement action between business competitors will require disclosure of information that typically would receive protection under Rule 26(c)(7), Fed.R.Civ.P. Since it appears that a protective order is necessary, the court must decide upon the substance and scope of that order.

Generally speaking, both of the proposed orders would permit classification of certain documents and materials into two categories of confidentiality: the first for confidential information and the second for highly confidential information. Both proposed orders would limit disclosure of confidential documents to the parties' attorneys, their employees and experts, and a limited group of the parties' employees. The proposed orders place a greater restriction upon the disclosure of highly confidential documents by forbidding the parties and their employees from having access to such documents.

The primary disagreement between the parties involves the scope of the higher category of confidential information. Plaintiffs complain that the defendant's proposed category for highly sensitive information is too broad, thus creating a potential for excessive or bad-faith designation of documents as highly confidential. Hunter, on the other hand, complains that the plaintiffs' proposed category is too narrow and would not protect many types of genuinely sensitive information. To an extent, the views of both the plaintiffs and the defendant have some merit.

The problem lies in the impossibility of defining precise criteria that can accurately be applied to the thousands of documents that the parties anticipate producing.

The court believes that the broader definition contained in Hunter's proposed order is more appropriate than the narrow definition advanced by the plaintiffs. First, the harm that would result from overdesignation is perhaps less severe than the harm that would result from the loss of sensitive competitive information. Second, the court, may be able to remedy the former type of harm. For example, if the court later finds that a party has misused the higher designation, then the court can modify the protective order, grant a motion to reclassify certain documents, or award sanctions in appropriate circumstances. On the other hand, once valuable proprietary information is lost, the damage could be irreparable. Finally, although Hunter's proposed order is broad, it does limit the higher designation to "information that is particularly sensitive and of immediate competitive significance." Assuming that the parties interpret this limitation reasonably and in good faith, it should provide them with some guidance.

The plaintiffs have some other objections to Hunter's proposed order. First, they argue that Hunter's order improperly defines "document" differently than does local rule 7.09. I find no material difference between the two definitions. Second, they also claim that Hunter's proposed order contradicts local rule 7.11, but that rule only provides a default protective order that applies in the absence of an order from the court. Third, the plaintiffs attack the provision in Hunter's proposed order that requires the parties to give five days' notice before using confidential information in court. I agree with the plaintiffs that this requirement is unnecessary given the rules governing discovery and pretrial disclosure. Finally, the plaintiffs are correct in arguing that any protective order should apply to both parties.

For the foregoing reasons, the court will grant Hunter's motion for a protective order, subject to the modifications in the previous paragraph. The plaintiffs' motion for a protective order will be denied.

### E. Plaintiffs' Motion for an Order Concerning the Attorney–Client Privilege

The plaintiffs anticipate producing "conceivably ... hundreds of thousands of documents" in response to Hunter's document production requests. To address the risk of inadvertent disclosure of documents protected by the attorney-client privilege, the plaintiffs preemptively request an order that such inadvertent disclosure will not result in waiver of the privilege.

■ Although the plaintiffs' position is not without some support, see Manual for Complex Litigation § 21.431, 3d Ed. Federal Judicial Center 1995, I conclude that the law relating to inadvertent waiver of the attorney-client privilege is not clear enough to permit a blanket ruling governing all potential claims of waiver that might arise in this case. Case law from the seventh circuit court of appeals, which controls with respect to this particular issue (see Atari Games Corp. v. Nintendo of America, Inc., 897 F.2d 1572, 1575 (Fed.Cir.1990) (in patent cases, law of regional circuit controls with respect to issues that fall outside the exclusive jurisdiction of the court of appeals for the federal circuit)), does not announce a clear rule with respect to the inadvertent waiver issue. Among the courts that have addressed the issue, a three-way split in authority has developed. Hydraflow, Inc. v. Enidine Inc., 145 F.R.D. 626, 637 (W.D.N.Y. 1993). Some courts apply an automatic waiver rule. Id. Others hold that inadvertent disclosure does not constitute a waiver in the absence of a showing that the client intended the waiver. Id. The majority of federal courts use a five-factor balancing test, which considers (1) the reasonableness of precautions taken to prevent disclosure, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) steps taken to rectify the disclosures, and (5) whether the overriding interests of justice would be served by relieving the party from its error. Briggs & Stratton Corp. v. Concrete Sales & Services, 176 F.R.D. 695, 699 (M.D.Ga.1997).

Although district courts within the seventh circuit have used all three approaches, the "emerging trend" is to use the balancing test.

*Sanner v. Board of Trade of the City of Chicago,* 181 F.R.D. 374, 379 (N.D.Ill.1998). I will adopt this test because it appears that the court of appeals for the seventh circuit would choose a similar approach if the issue were presented to it. *See Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1127 (7th Cir.1997). In *Dellwood Farms,* the court rejected the claim that the government's selective disclosure of confidential information, by itself, resulted in the waiver of the "law enforcement investigatory privilege". *Id.* In doing so, the court reasoned that "failing to be careful—committing a mistake that while careless may also be harmless—is not by itself a compelling reason for stripping a person of his privilege." *Id.* This reasoning applies equally, if not with greater force, to cases involving inadvertent disclosure of attorney-client privileged information. *See id.* at 1126–27 (noting that both inadvertent and selective disclosure do not involve intentional relinquishment of a right, and observing that "courts are somewhat less likely to find waiver" in inadvertent disclosure cases).

It seems likely that the court of appeals for the seventh circuit would join the majority of federal courts in rejecting a blanket rule that would apply in all cases of inadvertent disclosure. The plaintiffs' motion would require the court to fashion such a rule; that is a proposal which this court finds unattractive.

Therefore, IT IS ORDERED that Hunter's second motion to transfer be and hereby is denied.

IT IS ALSO ORDERED that the plaintiffs' motion to stay consideration of Hunter's second motion to transfer be and hereby is denied as moot.

IT IS FURTHER ORDERED that the plaintiffs' motion for a default judgment be and hereby is denied.

IT IS FURTHER ORDERED that Hunter's motion to dismiss the complaint or in the alternative for a more definite statement, as amended, be and hereby is dismissed as moot.

IT IS FURTHER ORDERED that Hunter's motion to dismiss the first amended complaint or in the alternative for a more definite statement be and hereby is granted in part and denied in part as follows:

a) Plaintiff Snap–On Inc. is dismissed from this action, without prejudice;

b) Hunter's motion to dismiss is denied without prejudice as to the two new patent infringement claims alleged in the amended complaint;

c) Hunter's motion to dismiss is denied in all other respects; and

d) Hunter's alternative motion for a more definite statement is denied.

IT IS FURTHER ORDERED that Hunter's motion for a protective order be and hereby is granted, subject to the conditions stated in the foregoing decision. Hunter is directed to submit a proposed protective order for this court's signature, such order to be consistent with the foregoing decision, after first exhibiting it to plaintiffs' counsel.

IT IS FURTHER ORDERED that the plaintiffs' motion for a protective order be and hereby is denied.

IT IS FURTHER ORDERED that the plaintiffs' motion for an order concerning the attorney-client privilege be and hereby is denied.

IT IS FURTHER ORDERED that each party shall bear its own costs in regard to these motions.