BRAINTREE LABORATORIES, INC., Plaintiff,

v.

NEPHRO–TECH, INC., et al., Defendants.

No. 96–2459–JWL.

United States District Court, D. Kansas.

Nov. 13, 1998.

Craig T. Kenworthy, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Over-

land Park, Arthur A Smith, Jr, Boston, MA, Allen R. Slater, Judge, District Judge, Div. 9, Olathe, KS, for Plaintiff.

Mark E. Brown, Marcia J. Rodgers, Litman, McMahon & Brown, Steven H. Mustoe, Kurlbaum, Stoll, Seaman, Reefer, Suter & Mustoe, P.C., Kansas City, MO, for Defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Braintree Laboratories, Inc. brought this action against defendants Nephro–Tech, Inc., G.P. Georges III and Kimberly J. Georges alleging patent infringement, common law unfair competition, and false or misleading advertising in violation of the Lanham Act. The matter is presently before the court on defendants' motion to dismiss plaintiff's § 271(c) claim and motion for judgment on the pleadings on plaintiff's § 271(a) and (b) claims (doc. 35) and plaintiff's motion to amend its complaint (doc 50). For the reasons set forth below, the court denies both motions.

### I. Factual Background

Plaintiff Braintree Laboratories, Inc. is a Massachusetts corporation. Plaintiff holds United States Patent No. 4,870,105, entitled "Phosphorous Binder," issued on September 26, 1989. According to plaintiff's complaint, the patent "claims methods, using calcium acetate, for inhibiting gastrointestinal absorption of phosphorous in an individual." Plaintiff neither discovered, nor holds a patent for, calcium acetate itself. Instead, plaintiff's patent claims only a "method" or "use" of calcium acetate as a phosphorus binder in the gastrointestinal tract.

Plaintiff markets a drug under the brandname Phos–Lo, which implements plaintiff's patented use of calcium acetate to treat kidney dialysis patients. The calcium in plaintiff's drug binds with excess phosphorus in the lower gastrointestinal tract to form an insoluable salt, thereby facilitating the excretion of phosphorous contained in food. Because diseased kidneys are unable to effectively eliminate phosphorus, a task normally accomplished by healthy kidneys, plaintiff's drug is useful to end-stage renal disease patients.

The federal Food and Drug Administration (FDA) approved plaintiff's drug on December 10, 1990, under the Federal Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–395. The FDA also designated the drug an "orphan drug", i.e., a drug for a rare disease or condition, under 21 U.S.C. § 360bb and accompanying regulations, thereby precluding the FDA from approving similar drugs for a period of seven years.

Defendant Nephro–Tech, Inc. is a Kansas corporation, owned by defendants G.P. and Kimberly Georges. Defendants market a product called Calphron, which, according to plaintiff, also contains calcium acetate intended for use as a phosphorus binder. The FDA has not approved the product for marketing as a drug. Calphron is labeled as a "dietary supplement."

Counts II and III of plaintiff's original complaint alleged common law unfair competition claims and violations of the Lanham Act, respectively. On February 26, 1997, this court dismissed counts II and III, holding that both counts essentially alleged misbranding in violation the FDCA. The court concluded that neither the Lanham Act, nor a common law claim of unfair competition, may serve as a vehicle to enforce the FDCA, a statute under which no private cause of action exists.

In Count I of its complaint, plaintiff alleges that defendants, by marketing Calphron, have infringed its patent in violation of 35 U.S.C. § 271. On December 13, 1996, defendants filed a request for reexamination of plaintiff's patent by the United States Patent and Trademark Office (PTO), in accordance with 35 U.S.C. §§ 301–307. In its memorandum and order of February 26, 1997, this court granted a stay of judicial proceedings in this action to allow for the resolution of the reexamination request with the PTO. *See* Memorandum & Order, 2/26/97. On March 10, 1998, the PTO issued a reexamination certificate, confirming the patentability of each of plaintiff's claims under Patent No. 4,870,105. As a result of the reexamination certificate's entry, the stay previously en-

tered by this court was lifted on April 15, 1998.

## II. Motion to Amend

### a. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "The decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion." *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991). The district court may justifiably refuse leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A motion to amend may be denied as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim." *Schepp v. Fremont County, Wyoming*, 900 F.2d 1448, 1451 (10th Cir.1990).

█ Undue delay may also prove fatal to a motion to amend; indeed, "[u]ntimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay." *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1495 (10th Cir.1995). Although the court should consider whether an amendment will cause delay and whether the adversary will suffer prejudice, *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir.1975), "prejudice to the opposing party need not also be shown." *Las Vegas Ice and Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990). Thus, if the movant was aware of the facts on which the amendment was based for some time prior to the motion to amend, a court may properly deny the motion for failure to demonstrate excusable neglect. *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir.1987); *State Distribs., Inc. v. Glenmore Distilleries*, 738 F.2d 405, 416 (10th Cir.1984).

### b. Calphron Amendment

To the extent that plaintiff's motion to amend its complaint concerns defendants' use and marketing of Calphron, the court denies the motion as futile. The court concludes that plaintiff's motion essentially restates its Lanham Act and unfair competition claims in an effort to subvert this court's dismissal of counts II and III of the original complaint. Because a motion to amend is properly denied where the proposed amendment would itself fail to withstand a motion to dismiss, *Schepp*, 900 F.2d at 1451, the court denies plaintiff's motion to amend the complaint with respect to defendants' Calphron product.

### c. Magnebind Amendment

Plaintiff also seeks, by its motion to amend, to introduce claims against defendants' use and marketing of a different product, Magnebind, into this litigation. Each of the claims against defendants' Magnebind product virtually echo those previously alleged against the Calphron product.

█ In an apparent attempt to justify its untimely introduction of Magnebind to this action, plaintiff simply offers that "at the time plaintiff filed its Complaint, Magnebind, to Plaintiff's knowledge, had not yet been introduced to the market and, accordingly was not included in the Complaint." Plaintiff fails to advance any explanation, however, as to why it chose to delay its motion to amend until September 8, 1998, even though plaintiff became aware of defendants' marketing of the product in January of 1998. In the absence of a compelling justification for this eight month delay, the court is reluctant to entertain plaintiff's claims with respect to an entirely different product.

Moreover, defendants have offered sufficient evidence of the prejudice that would result should this court grant the proposed amendment. Defendants have, until now, fashioned their defense solely with respect to the Calphron product. An amendment of the complaint to include claims against defendants' sale and marketing of Magnebind at this stage in the litigation would necessitate additional discovery previously uncontemp-

lated by defendants. The court also finds persuasive the fact that plaintiff has failed to adequately identify what, if any, harm will result if it is required to commence a separate action to enforce its purported rights against defendants' marketing of Magnebind.

## III. Motion to Dismiss and for Judgment on the Pleadings [1]

### a. Legal Standard

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Mock v. T .G. & Y.*, 971 F.2d 522, 528 (10th Cir. 1992). Consequently, for purposes of defendants' combined motion to dismiss and for judgment on the pleadings, the court will address both components of the motion according to the standard governing a motion to dismiss for failure to state a claim.

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir.1998). The issue in resolving a motion

such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### b. 35 U.S.C. § 271(c) Claim

■ Defendants move to dismiss plaintiff's contributory infringement claim on the ground that defendants' sale of calcium acetate as a dietary calcium supplement constitutes a substantial noninfringing use within the meaning of 35 U.S.C. § 271(c). A dismissal based on defendants' conclusory claim regarding its product's suitability for a noninfringing use is inappropriate, however. Indeed, "[t]aking the statute on its own terms, it is apparent that a mere theoretical capability [of sale for a noninfringing use] would hardly suffice." *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 415 (5th Cir.1963); *accord Alcon Lab., Inc. v. Allergan, Inc.*, 1990 WL 267418 at *14 (N.D.Tex.1990). Instead, defendants will be required, at some later stage of this litigation, to "show that suitability for such noninfringing use was actual and substantial." *Id.* A claim of contributory infringement involves the resolution of complicated fact questions unsuitable for determination on a motion to dismiss. Indeed, whether a product is capable of being sold for a substantial noninfringing use is a question of fact, the resolution of which is more appropriately determined at the summary judgment stage, in the event that no material issues of fact exist, or at a trial on the merits. In short, the court is not presently in a procedural posture to render this type of factual determination.[2]

---

1. Defendants argue in a supplemental memorandum to their motion to dismiss that plaintiff has effectively "pleaded itself out of court" by its proposed amendment to the complaint. Because the court denies plaintiff's motion to amend, the court does not consider this argument.

2. Defendants argue that the court must defer to the primary jurisdiction of the FDA regarding the suitability of defendants' product as a calcium supplement, claiming that "unless or until" the FDA rules on Calphron's efficacy as a dietary supplement, the court has no authority to assess the utility of the drug. The defendants' extensive briefing with regard to the complexities of administrative law misses the point, however. The court is not interested in determining whether

defendants' product is in fact an acceptable "dietary supplement" within the meaning of the FDA guidelines. Instead, the court is charged with the task of resolving whether defendants' marketing of the drug constitutes infringement of plaintiff's patented method. Whether Calphron is ultimately deemed safe and effective as a calcium supplement within the meaning of the FDCA is inapposite to this litigation because the relevant inquiry is whether the drug is suitable for a substantial, noninfringing use. Of course, the efficacy of Calphron as a calcium supplement necessarily carries evidentiary value; if the evidence shows that Calphron has little benefit beyond phosphorus binding, the inference that defendants are not in fact marketing it as a calcium

Mindful of the legal standard governing a motion to dismiss, the court is unwilling to accept the contention that plaintiff will be unable to prove any set of facts that may entitle it to recovery on its contributory infringement claim. Accordingly, defendants' motion to dismiss plaintiff's § 271(c) contributory infringement claim is denied.

### c. 35 U.S.C. § 271(a) & (b) claims

Additionally, defendants move for judgment on the pleadings with respect to plaintiff's § 271(a) and (b) claims. Defendants argue that both plaintiff's direct infringement and inducement of infringement claims collectively constitute a "camouflaged misbranding claim under the FDCA." Defendants maintain that both claims are premised on the allegation that defendants are marketing their product for use as a phosphorus binder, rather than for its labeled-use as a dietary supplement, and thus simply allege mislabeling of the product. Further, defendants claim that the mere sale of a product capable of performing the infringing use does not constitute "direct infringement" within the meaning of 35 U.S.C. § 271(a).

Under 35 U.S.C. § 271(a), a defendant is liable for direct infringement if it engages in the unauthorized use, manufacture, or sale of any patented invention. In its memorandum in opposition to defendants' motion for judgment on the pleadings, plaintiff restates its allegation that defendants are directly infringing its patent: "Defendants are liable for 'direct patent infringement' if they have used the patented method, even if that use was for a purpose of experimenting only." While possibly inartfully pled, in the context of a motion for judgment on the pleadings, all fact inferences are drawn in plaintiff's favor. Accordingly, at this stage in the proceeding, the court is disinclined to enter judgment on plaintiff's § 271(a) claim, as it is certainly plausible that plaintiff may, at a later time, come forth with sufficient facts to prove direct infringement.

Similarly, the court also denies defendants' motion for judgment on the pleadings with respect to plaintiff's § 271(b) claim. Section 271(b) imposes civil liability on parties who "actively induce[ ] infringement of a patent." 35 U.S.C. § 271(b). Plaintiff has alleged that although defendants' Calphron product is labeled as a "dietary supplement," defendants are actively marketing it as a substitute for plaintiff's Phos–Lo product, thereby inducing others to infringe plaintiff's patented method.

Contrary to defendants' assertion that plaintiff's § 271(b) claim is a thinly-veiled misbranding claim, the court concludes that active inducement could possibly be found without regard to the labeling on defendants' products. Indeed, a finding of active inducement requires only that defendant act with the requisite intent to encourage others to directly infringe plaintiff's patent, and that such direct infringement actually occur. *See, e.g., Wayne Automation Corp. v. R.A. Pearson Co.*, 790 F.Supp. 1505, 1507 (E.D.Wash. 1991). Consequently, the truth or falsity of the language on defendants' product labels is not dispositive; rather, the relevant inquiry will focus on plaintiff's ability to prove that defendants took active steps to induce others to infringe plaintiff's patent.

Moreover, a claim of active inducement is less susceptible to judgment on the pleadings because "[i]ntent is a factual determination particularly within the province of the trier of fact." *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1557 (Fed.Cir.1988). Plaintiff has alleged the following facts as evidence of defendants' "purposeful, intentional" steps to induce others to infringe plaintiff's patent: (1) advertisement and promotion of Calphron directly to the portion of the medical community specializing in the treatment of end-stage renal failure; (2) attendance of trade shows specially designed for practitioners treating end-stage renal failure; (3) concentration of their sales force on dialysis centers; (4) application for Medicaid recognition of Calphron as a phosphate binder; (5) and use of the names "Nephro–Tech" and "Calphron," both of which utilize the Greek root "nephros" meaning "kidney," which, plaintiff claims, misleadingly suggests

supplement will be raised. That question, however, is a fact question inappropriately before the

court on a motion to dismiss.

that Calphron is appropriate for use by kidney patients. The court finds these allegations sufficient to withstand a motion for judgment on the pleadings; indeed, the court is not convinced that it would be impossible for plaintiff to prove a set of facts that would entitle it to recovery on its active inducement claim. Accordingly, defendants' motion for judgment on the pleadings on plaintiff's § 271(b) claim is denied.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion to amend the complaint (doc. 50) is denied.

IT IS FURTHER ORDERED THAT defendants' motion to dismiss plaintiff's § 271(c) claim and for judgment on the pleadings on plaintiff's § 271(a) and (b) claims (doc. 35) is denied.