**SONY ELECTRONICS, INC. Consumer Electronics Association; Electronic Industries, Inc., Plaintiffs,**

v.

**SOUNDVIEW TECHNOLOGIES, INC., Defendant.**

**Soundview Technologies, Inc., Counterclaim Plaintiff,**

v.

**Sony Corporation of America, Et al. Counterclaim Defendants.**

**No. 3:00CV754(JBA).**

United States District Court, D. Connecticut.

June 14, 2001.

Gale R. Peterson, San Antonio, TX, pro se.

Jacqueline D. Bucar, S. Peter Sachner, Timothy P. Jensen, Tyler, Cooper & Alcorn, New Haven, CT, Richard L. DeLucia, Richard S. Gresalfi, Elizabeth A. Gardner, Kenyon & Kenyon, New York, NY, Richard M. Steuer, Kaye, Scholer, Fierman, Hays & Handler, New York, NY, Gary M. Hoffman, Dickstein, Shapiro & Morin, Washington, DC, Stephen P. Sachner, Hitt, Sachner & Miele, Cheshire, CT, Jaime A. Siegel, Park Ridge, NJ, for Sony Electronics, Inc., Sony Corp. of America.

Jacqueline D. Bucar, S. Peter Sachner, Timothy P. Jensen, Tyler, Cooper & Alcorn, New Haven, CT, Gary M. Hoffman, Dickstein, Shapiro & Morin, Washington, DC, Stephen P. Sachner, Hitt, Sachner & Miele, Cheshire, CT, for Consumer Electronics Ass'n, Electronic Industries Alliance.

Amy S. Owen, Miles & Stockbridge, McLean, VA, for Soundview Tech, Inc.

Garrard Russ Beeney, Jeffrey Scott, Sullivan & Cromwell, New York, NY, John M. DiMatteo, Michael Stacchini, Neal Feivelson, Patterson, Belknap, Webb & Tyler, New York, NY, James Sicilian, Eric L. Sussman, Day, Berry & Howard, Hartford, CT, for Philips Electronic NA Corp.

Joseph L. Clasen, Robinson & Cole, Stamford, CT, John J. Bogdanski, David S. Monastersky, Howd & Ludorf, Hartford, CT, John-Henry McKim Steele, Kenneth A. Votre, Votre & Associates, New Haven, CT, Amy S. Owen, Miles & Stockbridge, McLean, VA, Raymond P. Niro, Paul C. Gibbons, John C. Janka, Robert P. Greenspoon, Niro, Scavone, Haller & Niro, Chicago, IL, Eugene M. Cummings, David M. Mundt, Cook, Alex, McFarron, Manzo, Cummings & Mehler, Chicago, IL, for Soundview Tech, Inc.

Richard M. Steuer, Kaye, Scholer, Fierman, Hays & Handler, New York, NY, Michael S. Culver, Oliff & Berridge, Alexandria, VA, for Sony Corp. of America.

John E. Coffey, Reed, Smith, Hazel & Thomas, Falls Church, VA, for Philips Electronics NA Corp.

Joseph L. Clasen, David J. Burke, Brian E. Moran, James M. Ruel, Robinson & Cole, Stamford, CT, Vincent J. Belusko, Robert S. McArthur, Eric Shih, Morrison & Foerster, Los Angeles, CA, Les J. Weinstein, Squire, Sanders, Dempsey, Los Angeles, CA, for Mitsubishi Digital Electronics America, Inc.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Jo-

seph L. Clasen, James M. Ruel, Robinson & Cole, Stamford, CT, Vincent J. Belusko, Robert S. McArthur, Eric Shih, Morrison & Foerster, Los Angeles, CA, Les J. Weinstein, Squire, Sanders, Dempsey, Los Angeles, CA, for Mitsubishi Electronics America, Inc.

Richard J. Buturla, Robert L. Berchem, Berchem, Moses & Devlin, P.C., Milford, CT, Steven M. Pesner, Robert A. Johnson, Mira Helms Martinez, Akin, Gump, Strauss, Hauer & Feld, New York, NY, Adam Sheeh, Akin, Gump, Strauss, Hauer & Feld, Austin, TX, for Samsung Electronics America, Inc.

Glenn M. Cunningham, Patrick M. Fahey, Shipman & Goodwin, Hartford, CT, Thomas J. Nolan, John S. Schuster, Dale J. Giali, Ben M. Davidosn, Keri R. Curtis, Julie S. Gabler, Andrew Eliseev, Howrey, Simon, Arnold & White, Los Angeles, CA, Lewis G. Schwartz, Stamford, CT, for Pioneer Electronics (USA) Inc.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Alinor Clemans Sterling, Jacobs, Grudberg, Belt & Dow, P.C., new Haven, CT, Thomas G. Gallatin, jr., Latham & Watkins, New York, NY, Michael J. Shea, Larry S. Nixon, Jeffry H. Nelson, Nixon & Vanderhye, Arlington, VA, for Toshiba America Consumer Products, Inc.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Alinor Clemans Sterling, Robert W. Adams, Mickey Gill, Nixon & Vanderhye, Arlingtin, VA, for Sharp Electronics Corp.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Morton Amster, Michael J. Berger, Joseph M. Casino, John S. Economou, Abraham Kasdan, Amster, Rothstein & Ebenstein, New York, NY, for Matsushita Elec. Corp. of America, JVC Americas Corp.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Alinor Clemans Sterling, Nixon & Vanderhye, Arlingtin, VA, William J. Speranza, Wiggin & Dana, Stamford, CT, Kathleen McGillis Haley, Carl W. Schwarz, Michael D. Switzer, McDermott, Will & Emery, Washington, DC, for Hitachi America Ltd.

## MEMORANDUM OF DECISION

ARTERTON, District Judge.

In this consolidated case, counterclaim plaintiff Soundview Technologies (Soundview) seeks to recover against eleven television manufacturers and the manufacturers' trade association, Electronic Industries Alliance (EIA), for alleged patent infringement and anti-trust violations resulting from the manufacture and sale of television sets equipped with the V-chip technology that Soundview claims infringes its '584 patent, for alleged inducement of that infringement by the association, and for an alleged conspiracy by the manufacturers and the association to refuse to license Soundview's patent. All of the manufacturer-counterclaim defendants (manufacturers) have filed motions to dismiss and/or motions for summary judgment, and the industry association seeks to dismiss the claim that it induced patent infringement. Doc. # 154. This Ruling addresses only the industry association's motion.

### Factual Background

The "V-chip" is a device that enables parents to program television sets to block the display of violent or sexually explicit programming, and is mandated by the FCC to be included in all 13–inch or larger size television sets manufactured after January 1, 2000, with standards for the technology designed by the industry. *See* 47 C.F.R. § 15.120(d). EIA is a trade association headquartered in Arlington,

Virginia that "provides member companies with an information and assistance network to enhance their own competitive position in the marketplace" by finding "strength in numbers" to protect its member companies' "business interests." Counterclaim ¶ 21 (quoting EIA website). As part of its mission, EIA formed the R4.3 Television Data Systems Subcommittee to discuss V-chip implementation. Counterclaim ¶ 22. This subcommittee investigated patents "which might be infringed by those manufacturers who build equipment" in compliance with the regulation, which itself incorporates the EIA-designed standard (known as EIA–608) for how the V-chip must work. *Id.* at ¶ 23. EIA participated in a number of meetings with other counterclaim defendant-manufacturers, and informed them that a patent search had been conducted, and that "some patents were found to be essential to the standard," six of which "could pose a problem." *Id.* at ¶ 24. A listing of these patents was later provided to members, with Soundview's '584 patent included "as number one on EIA's list of the six patents identified as 'most relevant.'" *Id.* at ¶ 25. A cover memorandum to this list concluded that "[t]hose patents in the 'most relevant' category have, generally speaking, broader claims, which are more easily infringed." *Id.* at ¶ 73.

EIA's vice president of engineering, George Hanover, also prepared a memorandum for its members analyzing the possibility of enlisting the aid of the FCC in its efforts to "avoid unreasonable royalty demands" on its members, *id.* at ¶ 30, and advised its members that they could seek to extend the effective dates of the regulation or "explore the FCC's legal ability to preempt the intellectual property rights of holders unwilling to license the use of their patents on fair and reasonable terms...." *Id.* This same Hanover memorandum also noted that any such attempts would "likely encounter serious legal and jurisdictional problems...." *Id.* (quoting Hanover memo). EIA then agreed to "recalculate" the list of potentially applicable content advisory patents to its members, in order to ensure that its members all participated in the analysis of patents that might be "essential" to producing the required technology. *Id.* at ¶ 31.

In November of 1998, Soundview officially notified EIA of its plans to license its patent to manufacturers "on reasonable terms on a non-exclusive, non-discriminatory basis." EIA did not respond to the letter, and despite Soundview's offer, "no television set manufacturers have taken licenses." *Id.* at ¶ 32. Allegedly prompted by Soundview's license offer and Hanover's conclusion that the FCC would be unable to mandate compulsory licensing, EIA circulated another memo, explaining steps the association was taking to collect information about the prices being requested for patent licenses. The memo, which took the form of minutes from a February 17, 1999 meeting, explained that:

> EIA, at the request of some of its members, is in the process of evaluating these patents and assessing all of the options available to television manufacturers ... if any members have non-confidential information relating to the patent issues that they would like the EIA to be aware of in connection with Era's (sic) study of the situation (such as patents called to their attention, offered license terms, relevant prior art, etc.) please provide that information to George Hanover.

*Id.* at ¶ 33. The meeting minutes also make statements concerning the "revenue streams" of member companies, and also indicate that EIA would create and distribute "content advisory tapes" that could be used by the member companies "in testing the infringing products." *Id.* at ¶ 75.

EIA and the manufacturers also discussed Soundview at the February 17 meeting; the counterclaim alleges that "details of the discussion are not yet known, but they were of such nature that Soundview's consultant Bernard Lecher reported that he understood the discussion would not have taken place if the participants ... had known of Mr. Lecher's retention by Soundview." This consultant terminated his relationship with Soundview shortly thereafter, citing a "conflict of interest." *Id.* at ¶ 34. Despite Soundview's status as a member of EIA, it was unable to get the minutes of this and other meetings at which V-chip technology was discussed. *Id.* at ¶ 36.

Based on the above factual allegations, Soundview alleges that "EIA/CEMA has induced infringement of the '584 patent by knowingly and intentionally inducing others (including but not limited to manufacturing counterclaim defendants) to make, use, import, offer to sell and/or sell television sets fitted with 'V–Chips.'" *Id.* at ¶ 72. The counterclaim alleges that EIA "intended its members to do the acts constituting direct infringement," *id.* at ¶ 75, that EIA knew of Soundview's patent, *id.* at ¶ 72, that EIA "knew of and intended the infringing acts of its members—the manufacture and sale of television sets incorporating infringing V-chips," that EIA knew of the devices being manufactured by its members and that those devices infringed the '584 patent, "as EIA/CEMA had intended they would." *Id.* at ¶ 74. Soundview also alleges that the purpose of the patent search and identification of the most relevant patents was to induce such infringement. *Id.* at ¶ 76. EIA contends that these allegations fail to state a claim for inducing infringement, and that the claim therefore should be dismissed.

### Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court is required to accept as true those factual assertions set forth in plaintiff's complaint, and to read the complaint liberally, drawing all reasonable inferences in plaintiff's favor. *See* Fed.R.Civ.P. 12(b)(6); *Charles W. v. Maul,* 214 F.3d 350, 356 (2d Cir.2000). In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court should not dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir.1991), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. The court is required to accept as true all factual allegations in the complaint and to consider documents attached to or incorporated by reference in the complaint. Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (internal quotations and citations omitted). "The review of such a motion is limited, and the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (internal quotations, citations, and alterations omitted).

### Discussion

■ Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Thus, a person in-

fringes by actively and knowingly aiding and abetting another's direct infringement. *Water Technologies Corp. v. Calco,* 850 F.2d 660, 667 (Fed.Cir.1988). Although the statute does not use the word "knowing," the Federal Circuit has held that "proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement." *Hewlett–Packard Co. v. Bausch & Lomb,* 909 F.2d 1464, 1469 (Fed. Cir.1990). In other words, "[i]t must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringement." *Manville Sales Corp. v. Paramount Systems,* 917 F.2d 544, 553 (Fed. Cir.1990).

■ The parties agree that the basic elements of a claim for inducing infringement are as follows: 1) an inducer's knowledge of the asserted patent, *see Hewlett–Packard,* 909 F.2d at 1469; 2) direct infringement by a third party allegedly induced, *see Water Technologies,* 850 F.2d at 668; 3) the inducer's "actual intent to cause the acts which he knew or should have known would induce actual infringements," *Manville Sales Corp.,* 917 F.2d at 553; and 4) the commission of an act that constitutes inducement, not merely the power to act or the failure to act. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1569 (Fed.Cir.1994). The adequacy of Soundview's allegations as to the second element is not challenged, as the counterclaim charges that the manufacturers/counterclaim defendants "have directly infringed the '584 patent by making, using, importing, offering for sale and/or selling in this judicial district and throughout the United States television sets fitted with 'V–Chips.'" Counterclaim ¶ 71.

### 1. First Element—Knowledge

■ While EIA did not challenge the first element in its briefs, at oral argument it belatedly raised the contention that the chronology outlined in the counterclaim demonstrates that the standard was passed before EIA was aware of Soundview's patent, and thus the knowledge element is lacking. EIA cites *Black & Decker v. Catalina Lighting,* 953 F.Supp. 134 (E.D.Va.1997) as support for the proposition that there can be no actionable inducement for acts committed before the alleged inducer had knowledge of the patent at issue. In that case, Black & Decker sued Westinghouse Electric for inducing infringement of its flexible flashlight patent when Westinghouse licensed Catalina to use the Westinghouse trademark in the promotion and sale of various products, including the accused product. *Id.* Westinghouse and Catalina had entered into the licensing agreement prior to the issuance of the patent, and Westinghouse had no knowledge of Black & Decker's patent until it was served with the complaint in the infringement action. The district court therefore looked at Westinghouse's actions after it had been given notice of Black & Decker's patent to determine whether any inducement occurred. *Id.* at 138. Because Westinghouse exercised no control over the manufacture or shipment of the accused products after it received notice, and because Catalina had assured Westinghouse it would ship no more flashlights bearing the Westinghouse mark, the Eastern District of Virginia concluded that summary judgment was appropriate. *Id.* at 139.

■ The present case, however, involves the adequacy of pleadings, not the weight of the evidentiary record on the issue of EIA's knowledge. The counterclaim alleges that EIA was aware of the Soundview patent before it took a number of the actions that are alleged to be inducing. *See* Counterclaim ¶ 72 ("Defendant EIA/CEMA has known of the Soundview patent at least since its vice president, George Hanover, commissioned an investigation of U.S. patents which might be infringed by those manufacturers who build equipment for receiving and decoding content advisories information using the methods contained in EIA–608A"); *id.* at ¶ 77 ("the counterclaim defendants have been aware of the '584 patent and have, nonetheless, infringed that patent with knowledge of the patent's scope and application to V-chip television sets sold, imported, used, offered for sale and/or sold by manufacturing counterclaim defendants."). While EIA maintains that EIA–608 was in place before it took any steps to investigate patents and advise its members, from the face of the counterclaim the Court is unable to discern when this standard was finalized. The Court takes judicial notice of the fact that the FCC Final Rule adopting EIA–608 and incorporating the standard into the regulations was promulgated on April 23, 1998. *See* 63 FR 20131. The counterclaim alleges that EIA had knowledge of the '584 patent by January of 1997, at the very latest, *see* Counterclaim ¶ 24, and even without going outside the pleadings, a fair inference could be drawn from the allegations in the counterclaim · that the standard was still subject to modification at the time EIA took the actions complained of. As the counterclaim alleges that EIA had notice of the '584 patent by January 1997 at the latest, and that, in contrast to the defendant in *Black & Decker*, EIA engaged in inducing conduct after that date, the Court leaves to summary judgment or trial the resolution of the proper chronology here.

### 2. Third Element—Actual Intent

■ EIA charges that Soundview's Counterclaim is rife with "conclusory allegations laced with buzz words," Def. Mem. at 5, and that a careful examination of the Counterclaim reveals that Soundview has not alleged its actual intent to cause the acts which it knew or should have known would induce actual infringement. Soundview maintains that it has sufficiently alleged intent under the standard of Rule 9(b), which allows averments of intent to be made generally. It is the Court's view that EIA seeks to impose a higher standard on Soundview's pleadings than is warranted under Rule 8, and that viewed under the proper standard, Soundview's counterclaim adequately alleges the requisite intent.

First, EIA argues that none of the factual allegations in the counterclaim support the conclusion that Soundview draws in the inducement count: that EIA aided and abetted the manufacturers, and that it intended the manufacturers to use the technology claimed by the '584 patent. The allegations regarding EIA's mission and goals as a trade organization are completely irrelevant, the argument goes, and all that is left in the complaint is the following recitation: 1) EIA conducted meetings regarding the industry standard required by the regulation, 2) it conducted a patent search and distributed the list to its members, and 3) it had knowledge of the '584 patent. These facts, EIA claims, do not support the conclusory assertion that it induced others to infringe the patent. Mem. at 6.

EIA misconstrues the standard for "notice pleading" under Federal Rule of Civil Procedure 8, in seeking to require fact pleading instead of "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). As one court observed many years ago in declining to dismiss an inducement claim on a 12(b)(6) motion, "[a]ll that is usually required in the complaint is a generalized statement of the facts from which the defendant may form a responsive pleading; thus if a bona fide complaint is filed that charges every element necessary to recover, summary dismissal for failure to set out evidential facts is not justified." *American Technical Machinery Corp. v. Masterpiece Enterprises,* 235 F.Supp. 917 (M.D.Pa.1964), *citing Conley,* 355 U.S. at 46, 78 S.Ct. 99. The Federal Circuit has held that the requisite intent to induce infringement can be inferred from all of the circumstances. *Water Technologies,* 850 F.2d at 669. The counterclaim describes an industry association dedicated to the advancement of its members' interests in the marketplace that designed the technological standard referenced by federal regulations requiring the installation of certain technology on all new television sets. In developing and advising its members on these standards, this association conducted a patent search, concluded some patents were essential to that standard, identified the subject patent as the "most relevant" and "easily infringed," and communicated this information to the member companies, who are charged with direct infringement. While EIA takes issue with this characterization of its actions, and argues that terms such as "relevant" and "essential" do not have the meaning Soundview's counterclaim assigns them, for purposes of this motion the Court must accept the Counterclaim's allegations as true.[1] Counterclaim ¶ 25. EIA proposed a number of strategies to avoid royalty demands, including attempting to get the FCC to preempt the intellectual property rights of patent holders, and held a number of closed-door meetings, the minutes of which were not provided to Soundview, at which the '584 patent was discussed. Based on these facts, Soundview alleges that EIA "aided and abetted" the manufacturers in their infringement, and knowingly and intentionally induced the infringement. ¶¶ 71, 73. On the facts pleaded in the counterclaim, the Court cannot say that this conclusion is so completely preposterous and unsupported that it appears beyond doubt that Soundview cannot establish a valid claim for relief on this element. *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

The counterclaim plaintiff here has averred more than just EIA's knowledge of the patent, which is concededly insufficient to state a claim. *See Catapano v. Wyeth Ayerst Pharma.,* 88 F.Supp.2d 27 (E.D.N.Y.2000) (alleging knowledge of patent insufficient, where plaintiff had not alleged that "Defendants have claimed or recommended to anyone, implicitly or explicitly, that the" infringing product be used). The cases that EIA cites dismissing inducement claims are not to the contrary. In *Ristvedt–Johnson v. Peltz,* Docket No. 91 C 3273, 1991 WL 255691 (N.D.Ill. Nov.18, 1991), the district court dismissed an inducement claim because the complaint included only a "bald assertion" that the defendants induced a third party to infringe the plaintiff's patent, without any facts supporting this conclu-

---

1. EIA also refers the Court to the entirety of the memorandum, arguing that the quotes excerpted in the Counterclaim are taken out of context, and that an examination of the full document demonstrates that EIA only classified patents as "most relevant" based solely on the scope of the patent's claims, "without reference to any particular product." EIA Ex. 1. EIA has not explained how the Court can look beyond the pleadings at this point to extraneous material without converting the motion to one for summary judgment.

sion. The court there found the allegations insufficient because the plaintiff failed to "allege any facts showing *how* the defendants induced Brandt to infringe upon [plaintiff's] patents as required under *Manville.*" *Id.* at *4 (emphasis added). Here, the Counterclaim is replete with allegations as to how EIA accomplished its inducement; whether the inference of intent from these facts is reasonable cannot be determined at this stage.

The complaint in *Shearing v. Optical Radiation Corp.*, 30 U.S.P.Q.2d 1878, 1880 (D.Nev.1994) is similarly distinguishable. The court dismissed the inducement claim because both direct infringement by a third party and specific intent to induce had not been pleaded sufficiently; in fact, the latter had not been pleaded at all. The court acknowledged that intent and knowledge need only be averred generally, but that "such must be averred." *Id.* Because the complaint did not "afford a basis for believing that plaintiffs could prove scienter," it dismissed the inducement claim. *Id.* (internal citations omitted). Soundview's Counterclaim, however, does provide this basis, as it could prove that EIA intended to induce the infringement by pointing its members to the '584 patent and identifying it as "essential" and "most relevant," but still encouraging them to refuse licensing agreements. *Coolsavings.Com, Inc. v. Catalina Marketing Corp.*, Docket No. 98 C 6668, 1999 WL 342431, 1999 U.S. Dist. LEXIS 7891 (N.D.Ill. May 14, 1999), also involved a "bald assertion" of active inducement on the part of a parent corporation. The court concluded that the mere fact that the alleged third-party direct infringer was a business unit of the allegedly inducing infringer "does not provide the necessary inference of intent for this claim to move forward as it stands." *Id.*, 1999 WL 342431, at *2, 1999 U.S. Dist. LEXIS 7891, at *4. Here, the Counterclaim includes far

more detail regarding the relationship between EIA and manufacturer-defendants, their common goals, and the means by which the inducement was allegedly accomplished. Accordingly, *Coolsavings.Com* and *Shearing* do not support EIA's argument that the inducing claim should be dismissed for failure to sufficiently plead intent.

Soundview relies on *Snap–On Inc. v. Hunter Engineering*, 29 F.Supp.2d 965 (E.D.Wis.1998) in support of its argument that it has, if anything, exceeded the requirements for notice pleading in its inducement claim against EIA. The court in *Snap–On* denied a motion to dismiss contributory infringement and inducement to infringe claims, rejecting the argument that the claims failed to allege knowledge or intent. The court concluded that "because the amended complaint states that the defendant's actions were 'willful and deliberate,'" the allegation as to intent was sufficient. 29 F.Supp.2d at 970, *citing* Fed.R.Civ.P. 9(b) ("intent, knowledge and other conditions of mind may be averred generally."). EIA attempts to distinguish *Snap–On,* arguing that Soundview has not even "averred generally" intent, Mem. at 6, but the Counterclaim in this case far exceeds the *Snap–On* complaint. Other cases are in accord. In *Braintree Laboratories v. Nephro–Tech,* 31 F.Supp.2d 921 (D.Kan.1998), the court denied defendant's Rule 12(c) motion for judgment on the pleadings, noting that a number of facts had been alleged "as evidence of defendants' purposeful, intentional steps to induce others to infringe plaintiff's patent." *Id.* at 925. The facts in that case included allegations that the defendants advertised the allegedly infringing drug and marketed it to that portion of the medical community which specialized in a particular medical specialty, and that use of the product in that specialty could constitute infringe-

ment. *Id.* The court observed that "a claim of active inducement is less susceptible to judgment on the pleadings because intent is a factual determination particularly within the province of the trier of fact," and concluded that it was "not convinced that it would be impossible for plaintiff to prove a set of facts that would entitle it to recovery on its active inducement claim." *Id.* at 926. *See also Zenith Electronics v. Exzec,* No. 93 C 5041, 1994 WL 444804 (N.D.Ill. Aug. 15, 1994) (plaintiff had sufficiently alleged facts allowing corporate officer to be held personally liable for inducing infringement, when complaint alleged that officer "willfully and wantonly infringed;" complaint essentially alleged that officer acted with purposeful intent to assist in violating patent).

Second, EIA argues that the Counterclaim inadequately alleges a connection with the specific patent held by Soundview, the '584 patent. According to EIA, there are no facts alleged indicating that EIA knew what specific technology each of the eleven counterclaim defendants was utilizing in the manufacture of its television sets, and that no facts alleged indicate EIA intended to cause the member companies to use the specific technology claimed in the '584 patent. The counterclaim does suggest that EIA "singled out" the '584 patent, as discussed above, and even if the '584 patent was but one of several that EIA induced its members to infringe, EIA cannot escape liability for inducement simply because it included a number of patents on its list of "most relevant."

At oral argument, EIA countered that because it never advocated the use of a particular design, but instead only encouraged its members to follow the EIA standard, it cannot be liable for inducing infringement. As an initial matter, the Court cannot decide what the standard entails based on the pleadings alone. Whether the standard simply establishes "operating parameters" such as, for instance, the location for embedding a content code, as EIA argues, or whether the standard itself infringes, as Soundview contends, must await later resolution. According to the counterclaim, EIA itself listed some patents as "essential" to the standard, including the '584 patent, and in that way identified for its members a particular design. *See* Counterclaim ¶ 73 (EIA "provided its members with the design disclosed in the '584 patent and encouraged, aided and abetted its members such as manufacturing counterclaim defendants to use the specific design protected by the '584 patent—the 'most relevant' design to the V-chip device—and thereby to infringe the '584 patent."). In addition, the counterclaim conveys the sense that EIA was extremely interested in Soundview's patent—it never responded to requests for a license, it treated Soundview differently than its other members with respect to providing copies of minutes and the like, and Lechner's withdrawal as a consultant from Soundview due to an unspecified "conflict of interest" all combine to allow the inference that something untoward was occurring. As Soundview's counsel put it at oral argument, EIA engaged in much "hand wringing" over the Soundview patent, and whether that hand wringing amounted to inducing its members to infringe the patent, or was simply concern with its members' compliance with the federal regulations, cannot be determined on the face of the pleadings alone.

Third, EIA also maintains that at the most, the Counterclaim alleges that it encouraged its members to comply with the FCC regulations regarding the V–Chip, and that if the manufacturing counterclaim defendants are being induced, it is

by the FCC, not EIA.[2] This argument ignores the allegation that EIA developed the standard; indeed, the regulation itself references EIA. *See* 47 C.F.R. § 15.120(d) ("television receivers will receive program ratings transmitted pursuant to industry standard EIA–744 ... and EIA–608."). The regulations do not require the use of any particular technology, and it is Soundview's contention that in selecting the means by which to implement the governmental mandate, the television manufacturers (induced by EIA) infringed its patent. Should Sharp prevail on its governmental license summary judgment motion, of course, Soundview's inducement claim against EIA would fail, both because there would be no actionable infringement and because any inducement would flow from the government, rather than EIA, but this question is not posed in the instant motion. Further, EIA's characterization of the facts alleged in the counterclaim significantly understates the scope of the allegations. Soundview claims that EIA did more than just urge compliance with the law; the association is alleged to have specifically identified the Soundview patent as the "most relevant" for its members, engaged in off-the-record discussions about the Soundview patent that resulted in a Soundview consultant terminating his relationship, and encouraged its members not to take licenses from Soundview despite the fact that the '584 patent is "essential" to the industry-adopted standard. Again, whether EIA's conduct was actually as innocent as the association now claims cannot be determined at this stage in the litigation, where the Court is obligated to assume the truth of every allegation.

Finally, EIA contends that Soundview's inducement counterclaim is illogical, and that thus the requisite intent element is not adequately pleaded in the counterclaim. EIA argues that according to Soundview, it advised its members that the Soundview patent was the broadest and most easily infringed, as quoted in the Counterclaim, and that it is counterintuitive to infer from this statement that it therefore encouraged its members to infringe the '584 patent. Why would EIA encourage anyone to use the technology of the patent with the broadest claims, it argues, when there are other patents with narrower claims that are less likely to be infringed? If anything, according to EIA, a statement that the patent is "most easily infringed" is more likely to discourage infringement than to induce it, highlighting the absence of the intent element. EIA Mem. at 8. While this argument may have appeal, and perhaps may be persuasive when a full record is developed, the inferences to be drawn from facts alleged in the counterclaim should be left to summary judgment. It could be that because the '584 patent was the most relevant, and the industry would be unable to prevail upon the FCC to use its regulatory powers to defeat the intellectual property rights of patent-holders, EIA and the manufacturers determined to use Soundview's patent nonetheless, as it was the most relevant, hoping to use their industry power to brow-beat Soundview into accepting their terms. While such a theory is not specifically alleged in the pleadings, "at this stage the plaintiff receives the benefit of imagination." *Sanjuan v. American Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir.1994), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996). Accordingly, the Court will not dismiss the counterclaims based on appeals to logic alone.

**2.** A variant of this argument is posed in counterclaim defendant Sharp's motion for summary judgment on the grounds of an "implied governmental license." *See* Doc. # 148.

3. Affirmative Acts of Inducement

■ In its reply brief, EIA argues that Soundview has failed to plead facts sufficient to show the commission of an act that constitutes inducement, a necessary element of an inducement claim as discussed above. In essence, this is a retread of EIA's argument discussed above—because the acts alleged in the Counterclaim (conducting patent investigation, distributing results, etc.) do not constitute acts encouraging inducement of a patent, Soundview has failed to state this element of the claim as well. As outlined above, the Court disagrees with EIA's central position that the facts alleged in the counterclaim could never amount to inducing infringement. Further, Soundview has gone beyond alleging the mere power to act, or the failure to act: it has listed a number of specific steps EIA took in furtherance of its intent to induce infringement of Soundview's patent. EIA identified the "most relevant" patent for its members, circulated that information to them, posited various ways its members could avoid licensing obligations, and provided test tapes for its members to ascertain whether their allegedly infringing products met the regulatory requirements. These allegations meet the requirements for the final element of an inducement claim. As the Federal Circuit recently noted:

> Of course inducement has connotations of active steps knowingly taken—knowingly at least in the sense of purposeful, intentional as distinguished from accidental or inadvertent. But with that qualifying approach, the term is as broad as the range of actions by which one in fact causes, or urges, or encourages, or aids another to infringe a patent.

*Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378 (Fed.Cir.2001). Although this is not the usual inducement case, where an infringer promotes a product for an infringing use, *Tegal* makes clear that the scope of inducement claims is not limited to such situations. As affirmative acts knowingly taken are alleged here, Soundview has adequately alleged this element of its inducement claim.

### Conclusion

EIA's motion seeks to hold Soundview to a higher standard of factual pleading specificity than is required. Given the liberal pleading standard of Rule 8(a), Soundview has adequately pleaded an inducement claim against EIA, where it alleges that the association designed the industry standard for the V–Chip, identified the '584 patent as the "most relevant" and the most "easily infringed," encouraged its members to refuse license agreements, engaged in numerous discussions regarding Soundview's technology, and eventually presented Soundview with an "ultimatum" in terms of the licensing fee its members would pay. As Soundview's legal theory has not been shown to be completely without merit, the Court cannot say that there is no possibility Soundview could present facts in support of its claims. The motion to dismiss Soundview's. inducement claim (Doc. # 154) is therefore DENIED.

IT IS SO ORDERED.