**SONY ELECTRONICS, INC. Consumer Electronics Assn. Electronic Industries, Inc., Plaintiffs,**

v.

**SOUNDVIEW TECHNOLOGIES, INC., Defendant,**

**Soundview Technologies, Inc., Counterclaim Plaintiff,**

v.

**Sony Corporation of America, et al Counterclaim Defendants.**

**No. 3:00CV754 JBA.**

United States District Court, D. Connecticut.

July 16, 2001.

Gale R. Peterson, San Antonio, TX, pro se.

Jacqueline D. Bucar, S. Peter Sachner, Timothy P. Jensen, Tyler, Cooper & Alcorn, New Haven, CT, Richard L. DeLucia, Richard S. Gresalfi, Elizabeth A. Gardner, Kenyon & Kenyon, New York, NY, Richard M. Steuer, Kaye, Scholer, Fierman, Hays & Handler, New York, NY, Gary M. Hoffman, Dickstein, Shapiro & Morin, Washington, DC, Stephen P. Sachner, Hitt, Sachner & Miele, Cheshire, CT, Jaime A. Siegel, Park Ridge, NJ, for Sony Electronics, Inc., Sony Corp. of America.

Jacqueline D. Bucar, S. Peter Sachner, Timothy P. Jensen, Tyler, Cooper & Alcorn, New Haven, CT, Gary M. Hoffman, Dickstein, Shapiro & Morin, Washington, DC, Stephen P. Sachner, Hitt, Sachner & Miele, Cheshire, CT, for Consumer Electronics Ass'n, Electronic Industries Alliance.

Amy S. Owen, Miles & Stockbridge, McLean, VA, for Soundview Tech, Inc.

Garrard Russ Beeney, Jeffrey Scott, Sullivan & Cromwell, New York, NY, John M. DiMatteo, Michael Stacchini, Neal Feivelson, Patterson, Belknap, Webb &

Tyler, New York, NY, James Sicilian, Eric L. Sussman, Day, Berry & Howard, Hartford, CT, for Philips Electronic NA Corp.

Joseph L. Clasen, Robinson & Cole, Stamford, CT, John J. Bogdanski, David S. Monastersky, Howd & Ludorf, Hartford, CT, John-Henry McKim Steele, Kenneth A. Votre, Votre & Associates, New Haven, CT, Amy S. Owen, Miles & Stockbridge, McLean, VA, Raymond P. Niro, Paul C. Gibbons, John C. Janka, Robert P. Greenspoon, Niro, Scavone, Haller & Niro, Chicago, IL, Eugene M. Cummings, David M. Mundt, Cook, Alex, McFarron, Manzo, Cummings & Mehler, Chicago, IL, for Soundview Tech, Inc.

Richard M. Steuer, Kaye, Scholer, Fierman, Hays & Handler, New York, NY, Michael S. Culver, Oliff & Berridge, Alexandria, VA, for Sony Corp. of America.

John E. Coffey, Reed, Smith, Hazel & Thomas, Falls Church, VA, for Philips Electronics NA Corp.

Joseph L. Clasen, David J. Burke, Brian E. Moran, James M. Ruel, Robinson & Cole, Stamford, CT, Vincent J. Belusko, Robert S. McArthur, Eric Shih, Morrison & Foerster, Los Angeles, CA, Les J. Weinstein, Squire, Sanders, Dempsey, Los Angeles, CA, for Mitsubishi Digital Electronics America, Inc.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Joseph L. Clasen, James M. Ruel, Robinson & Cole, Stamford, CT, Vincent J. Belusko, Robert S. McArthur, Eric Shih, Morrison & Foerster, Los Angeles, CA, Les J. Weinstein, Squire, Sanders, Dempsey, Los Angeles, CA, for Mitsubishi Electronics America, Inc.

Richard J. Buturla, Robert L. Berchem, Berchem, Moses & Devlin, P.C., Milford, CT, Steven M. Pesner, Robert A. Johnson, Mira Helms Martinez, Akin, Gump, Strauss, Hauer & Feld, New York, NY,

Adam Sheeh, Akin, Gump, Strauss, Hauer & Feld, Austin, TX, for Samsung Electronics America, Inc.

Glenn M. Cunningham, Patrick M. Fahey, Shipman & Goodwin, Hartford, CT, Thomas J. Nolan, John S. Schuster, Dale J. Giali, Ben M. Davidosn, Keri R. Curtis, Julie S. Gabler, Andrew Eliseev, Howrey, Simon, Arnold & White, Los Angeles, CA, Lewis G. Schwartz, Stamford, CT, for Pioneer Electronics (USA) Inc.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Alinor Clemans Sterling, Jacobs, Grudberg, Belt & Dow, P.C., new Haven, CT, Thomas G. Gallatin, jr., Latham & Watkins, New York, NY, Michael J. Shea, Larry S. Nixon, Jeffry H. Nelson, Nixon & Vanderhye, Arlington, VA, for Toshiba America Consumer Products, Inc.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Alinor Clemans Sterling, Robert W. Adams, Mickey Gill, Nixon & Vanderhye, Arlingtin, VA, for Sharp Electronics Corp.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Morton Amster, Michael J. Berger, Joseph M. Casino, John S. Economou, Abraham Kasdan, Amster, Rothstein & Ebenstein, New York, NY, for Matsushita Elec. Corp. of America, JVC Americas Corp.

William M. Bloss, Jacobs, Grudberg, Belt & Dow., P.C., New Haven, CT, Alinor Clemans Sterling, Nixon & Vanderhye, Arlingtin, VA, William J. Speranza, Wiggin & Dana, Stamford, CT, Kathleen McGillis Haley, Carl W. Schwarz, Michael D. Switzer, McDermott, Will & Emery, Washington, DC, for Hitachi America Ltd.

## MEMORANDUM OF DECISION [DOC. # 148, # 152, # 170, # 172]

ARTERTON, District Judge.

This patent and antitrust case concerns the intellectual property rights of counter-

claim plaintiff Soundview Technologies, Inc. (Soundview) to the V–Chip technology utilized by a number of television manufacturers, counterclaim defendants. Familiarity with the procedural and factual background of this litigation is presumed. *See, e.g.,* Ruling on Counterclaim Defendant EIA's Motion to Dismiss dated June 14, 2001 [doc. # 262]. Relevant to the instant motion, counterclaim defendant Sharp Electronics Corporation (Sharp) claims it received an implied governmental license to use Soundview's patented V-chip technology when Congress passed the Telecommunications Act of 1996 (the 1996 Act); in the alternative, it argues that Soundview is both legally and equitably estopped from bringing this infringement action because of its conduct before the Federal Communications Commission (FCC) during the proceedings to promulgate regulations under the 1996 Act. All of the remaining counterclaim defendants (Sony, Toshiba, Matsushita, JVC, Mitsubishi Digital Electronics, and the Electronic Industries Association) have moved to join Sharp's motion. *See* doc. # 148, # 152, # 170, # 172. For the reasons that follow, the motion is DENIED.

### Standard

Sharp acknowledges that it has the burden of proof on its affirmative defenses of implied license and estoppel. *See, e.g., Mooney v. City of New York,* 219 F.3d 123 (2d Cir.2000), *citing United States v. Omdahl,* 104 F.3d 1143, 1146 (9th Cir.1997) (party asserting the affirmative defense of estoppel has burden of proof). In order to prevail on its summary judgment motion, therefore, Sharp must demonstrate that no reasonable fact-finder could find against it on its affirmative defenses, and that it is entitled to judgment as a matter of law. The Court further notes that at the time this motion was filed, Soundview had not yet taken any discovery, and "[o]nly in the

rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000).

### Discussion

In patent law, the granting of a license "signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention." *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.,* 103 F.3d 1571, 1580 (Fed.Cir.1997), *cert. denied,* 522 U.S. 818, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997). An implied license, like an express license, is a complete defense to a claim of patent infringement. *Carborundum Company v. Molten Metal Equipment Innovations, Inc.,* 72 F.3d 872, 878 (Fed.Cir.1995). An implied license may arise by acquiescence, conduct, equitable estoppel or by legal estoppel. *Wang,* 103 F.3d at 1580 (citations omitted). "These labels describe not different kinds of licenses, but rather different categories of conduct which lead to the same conclusion: an implied license." *Id.* The Federal Circuit has noted that "judicially implied licenses are rare under any doctrine." *Wang,* 103 F.3d at 1581; *see also Stickle v. Heublein,* 716 F.2d 1550, 1558 (Fed.Cir. 1983) (referring to "the relatively few instances where implied licenses have been found . . . ."). Whether an implied license exists is a question of law. *Carborundum,* 72 F.3d at 877.

Sharp claims that two bases exist for the finding of an implied license: first (what Sharp calls "legal estoppel"), the United States government granted it an implied license by virtue of its mandate in the 1996 Act that V-chip technology be incorporated into new television sets sold in this country; and second, that Soundview is equitably estopped from denying the existence of

an implied license because it had a legal obligation to inform the FCC of its patent claims and of the license granted to the U.S. government. The Court concludes that summary judgment is inappropriate on either of these grounds, as Sharp has failed to demonstrate that it is entitled to judgment as a matter of law.

■ In analyzing the federal government's authority to grant licenses on Soundview's patent (the '584 patent), the Court agrees with Sharp that the relevant language is that of paragraph 1(b) of Executive Order No. 10096, which provides for the reservation to the government of a non-exclusive, royalty-free license "with power to grant licenses for all governmental purposes." Sharp Ex. 5. All of the documents and forms filled out by Elam and the other inventor of the '584 patent reference this provision, and contrary to Soundview's position, the language of paragraph 1(b) does on its face reserve to the government the power to grant licenses. Such licenses can only be granted for "governmental purposes," however, and Sharp's argument founders on this requirement. Sharp maintains that 'governmental purposes' must be interpreted to mean anything the government does, which includes legislating to require that V-chips be included in television sets. As Soundview caustically points out, however, "Sharp and its co-conspirators sell their TV sets to consumers to watch 'Wheel of Fortune,' not the United States government to run air traffic control centers or the like." Soundview Mem. at 19. More to the point, the legislation adopted by Congress, while manifesting a "compelling interest" in implementing the technology to allow the blocking of objectionable programming, did *not* mandate that Sharp and the other manufacturers use Soundview's technology. Rather, § 551 of Public Law 104–104 states that the FCC shall oversee the "adoption of standards by the industry" and that FCC rules shall require all televisions to "conform to signal blocking specifications established by the industry . . . ." Sharp discounts this distinction by arguing that the adoption of standards was mandated by the 1996 Act, but this reductionist argument ignores the fact that the industry, through the R4.3 subcommittee, chose the standard that Soundview now alleges infringes its patent. Sharp seeks to avoid this fact by arguing that since Soundview maintains that any implementation of V-chip technology mandated by the federal government infringes its patent, it is "unfair for Soundview to argue that the 1996 Act does not compel use of Soundview's specific technology." Sharp Reply Mem. at 7.

In one of the letters exchanged between Sharp and Soundview about a license and submitted by Sharp in support of its summary judgment motion, however, Soundview's then-attorney stated that "Elam's technology is not explicitly required under the Telecommunications Act or FCC regulations." Sharp. Ex. 17. While Sharp points to numerous uses of the term "mandate" and "requirements" in both the 1996 Act and the FCC Report implementing it, these do not demonstrate legislative compulsion to use a particular patent; rather, they refer to a mandated outcome: new television sets are to have program-blocking capabilities, and the FCC is to make sure it happens. In the Court's view, the "compelling interest" language in the legislative history should be read more as Congressional attempts to make a record demonstrating that it chose narrowly tailored means to accomplish a compelling governmental interest for purposes of prospective First Amendment challenges, rather than a manifestation of any intent to allow television manufacturers to practice the '584 patent.

Given that the government has not mandated the use of a particular technology, but rather industry selected the standard which requires, in Soundview's opinion, that the manufacturers infringe its patent, the "governmental purpose" served by allowing Sharp to use Soundview's patent royalty-free is hard to discern. This conclusion is strengthened by Soundview's evidence showing that on the two occasions when the government was asked expressly to license a patent or preempt intellectual property rights, the government declined. The FCC rejected Toshiba's request to preempt certain patents, finding that the possibility of existing patents "does not inherently conflict with the rules adopted in this proceeding since no evidence has been presented of unreasonable royalty or licensing policies," deciding instead "to allow the market to decide or innovate which implementation technologies will be used." Soundview Ex. B at ¶ 41 Based on this decision, the Air Force also declined a request for a governmental license under the '584 patent in particular, concluding that Thomson had presented "no compelling reason why such a governmental purpose license as has been requested by [Thomson] should be approved." Sharp Ex. 20.

Sharp has not identified any cases where an implied governmental license was found to exist based simply on pronouncements in the legislative history of a particular statute. Rather, the cases cited by Sharp involve government contractors or subcontractors, in which the disposition of patent rights was an express provision of the contract, or where the government itself owned the patent. *See AMP Inc. v. United States*, 182 Ct.Cl. 86, 389 F.2d 448 (1968) (tool developed pursuant to contract with the Army that required inventor to grant the government an "irrevocable, nonexclusive, nontransferable and royalty-free license" to practice the invention).

When Army then contracted with another company to manufacture tool, inventor's infringement suit based on after-acquired patent that purportedly dominated original patent was estopped. *FilmTec Corp. v. Hydranautics*, 982 F.2d 1546 (Fed.Cir. 1992) (invention conceived pursuant to research paid for by a government contract entered into under a statute requiring title to the invention to vest in the government); *Tektronix v. United States*, 173 Ct.Cl. 281, 351 F.2d 630 (1965) (patent infringement counterclaim filed by the federal government alleging that certain patents it *owned* had been infringed by the plaintiff company).

The opinion in *Nuclear Data, Inc. v. Atomic Energy Commission*, 364 F.Supp. 423, 180 U.S.P.Q. 286 (N.D.Ill.1973), upon which Sharp heavily relies, is similarly distinguishable. The invention in that case had been conceived and developed while the inventor was an employee of an institution that contracted with the Atomic Energy Commission pursuant to a contract which gave the Commission the "sole power to determine whether or not ... a patent application shall be filed and to determine the disposition of the title to and rights under any application or patent that may result." *Id.* at 287, 364 F.Supp. at 424. A patent covering the invention was issued, and the Atomic Energy Commission "reserved to the United States an exclusive license to use the patent for both governmental and non-governmental purposes" and which by the license's terms gave the Commission "the power to license others ... to use the [patent] in whatever manner the agency deemed desirable, whether through sublicensing manufacturers or otherwise." *Id.*

The Atomic Energy Commission then revoked the license and divested the United States of all rights in the patent "except for a nonexclusive right to use it for

governmental purposes only." *Id.* In response to this change, a competitor of the inventor's employer brought suit against the federal agency for changing the license terms, because had the license not been changed, "plaintiff could have obtained a royalty-free license..." to practice the patent from the Commission. *Id.* The Court is actually mystified by Sharp's citation of the *Nuclear Data* case, because the change in the license terms better supports Soundview's position—the first license, which would have granted the royalty-free license that Sharp seeks here, contains much more explicit language than in the present case, and the terms of the second license are much closer to that which the government reserved in the '584 patent. The case law cited by Sharp thus does not persuade the Court that counterclaim defendants are entitled to judgment as a matter of law by virtue of any "implied license" granted by the federal government.

 Sharp's argument that an implied license arises by virtue of Soundview's actions before the FCC is equally unavailing. Equitable estoppel, or "estoppel in pais," looks at the entire course of conduct to determine whether the patentee mislead the alleged infringer into believing that it would not enforce its patent rights. *See Wang,* 103 F.3d at 1580. In order to establish equitable estoppel against a patent infringement claim, the alleged infringer must demonstrate each of the following elements by a preponderance of the evidence:

1) The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction or silence where there was an obligation to speak.

2) The alleged infringer relies on that conduct.

3) Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*Aukerman v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1028 (Fed.Cir.1992) (en banc). The grounds for equitable estoppel here, Sharp argues, are Soundview's failure to make any mention of the '584 patent when it submitted its comments to the FCC, and its failure to notify the industry that it intended to demand royalties for the use of its patent. An implied license to Sharp therefore exists arising out of Soundview's "unclean hands," according to Sharp. The Court disagrees with Sharp's characterization of Soundview's conduct, as at the least, facts remain in dispute as to whether Soundview's conduct was misleading, and whether Sony relied on this conduct to its detriment. *See Jamesbury Corp. v. Litton Indust. Products, Inc.,* 427 F.Supp. 756 (D.Conn.1977) (denying summary judgment on equitable estoppel defense because substantial fact issues existed as to availability of defense).

Soundview contends that its objective with the FCC was to advocate for the adoption of a uniform standard, rather than multiple standards, and based on the evidence in the record a fact-finder could credit this interpretation of its actions before the FCC. *See* Sharp Ex. 13 (Soundview's comments to the FCC, speaking in general terms about the need to promptly adopt "a rating system and technical standard") (emphasis added). Sharp has not identified any authority requiring Soundview to disclose its patent interests, in a context where Soundview was not speaking to the technical standard that should be adopted. Soundview has averred that it was not a member of the R4.3 subcommittee at the time relevant to this dispute,

and the case law cited by Sharp imposing a duty to disclose patent interests when the patentee is involved in the standards-setting procedure is therefore distinguishable. *See Stambler v. Diebold, Inc.*, 11 U.S.P.Q.2d 1709 (E.D.N.Y.1988) (plaintiff sat on ANSI standards committee but did not divulge patent interests, and then sued for infringement ten years later); *Potter Instrument Co. v. Storage Technology Corp.*, 207 U.S.P.Q. 763 (E.D.Va.1980) (after hearing involving live testimony and "voluminous exhibits," district court dismissed infringement action where representative of the patentee sat on the ANSI standards committee but did not disclose its ownership of the patent, even when one of its licensees proposed the patented technology as an industry-wide standard for "Z buffers" on magnetic tape drives).

Even if "misleading" conduct on the part of Soundview could be found as a matter of law, Sharp has also failed to submit any evidence showing that it relied on Soundview's conduct. Reliance is an element "essential to equitable estoppel," *Aukerman,* 960 F.2d at 1042, and to show reliance, "the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security" in going forward with its plans. *Id.* Sharp made no arguments in its brief regarding reliance, and in response to a question regarding this element at oral argument, merely posited that reliance could be presumed. The Court declines to make such a presumption on this record, where there is no evidentiary showing that Soundview's inaction or silence had some effect on Sharp and the other television manufacturers. For instance, there is no indication that Sharp even read Soundview's comments to the FCC, much less concluded from them that Soundview did not intend to enforce its rights. Nor is there any indication that Sharp knew that Bernard Lechner, had

any association with Soundview (in fact, the Counterclaims suggest that Lechner was something of a "secret agent"), such that his failure to speak could allow the manufacturers to assume Soundview would not pursue its claims.

Without any evidence of reliance, and without identifying case law imposing a duty on Soundview to disclose its patent rights in these circumstances, the Court cannot conclude that Sharp is entitled to judgment as a matter of law on its affirmative defense of equitable estoppel. Although it may be the case that Soundview purposefully concealed its patent rights during the standards-adoption process and then sprang its intentions to enforce the '584 patent on television manufacturers who reasonably believed that Soundview would not pursue an infringement claim, the record is not so undisputed, and the case law not so persuasive, that Sharp is entitled to judgment as a matter of law. Sharp may, of course, pursue its equitable estoppel defense at trial, and discovery may uncover further information regarding Soundview's motivations and conduct, but judgment on Sharp's affirmative defense is premature at this point.

### Conclusion

For the reasons discussed above, the motion of counterclaim defendant Sharp for summary judgment [doc. # 148] is DENIED. As counterclaim defendants Thomson Consumer Electronics, JVC Americas Corporation, and Matsushita Electrical Corporation have adopted Sharp's arguments, their motions for summary judgment [doc. # 152, # 170, # 172] are DENIED as well.

IT IS SO ORDERED.