SONY ELECTRONICS, INC.,

v.

SOUNDVIEW TECHNOLOGIES, INC.

No. 3:00CV754(JBA).

United States District Court,
D. Connecticut.

Feb. 5, 2002.

Gale R. Peterson, San Antonio, TX, pro se.

Jacqueline D. Bucar, S. Peter Sachner, Timothy P. Jensen, Tyler, Cooper & Alcorn, New Haven, CT, Richard L. DeLucia, Richard S. Gresalfi, Elizabeth A. Gardner, Thomas R. Makin, Kenyon & Kenyon, New York City, Gary M. Hoffman, Dickstein, Shapiro, Morin & Oshinsky, Washington, DC, Richard M. Steuer, Mayer, Brown, Rowe & Maw, New York City, Jaime A. Siegel, Park Ridge, NJ, Kenneth W. Brothers, Jorge Kotelanski, Dickstein, Shapiro, Morin & Oshinsky, Washington, DC, Garrard Russ Beeney, Jeffrey Scott, Sullivan & Cromwell, New York City, John M. DiMatteo, Michael Stacchini, Neal Feivelson, Patterson, Belknap, Webb & Tyler, New York City, for plaintiffs.

Joseph L. Clasen, Robinson & Cole, Stamford, CT, John J. Bogdanski, David S. Monastersky, Howd & Ludorf, Hartford, CT, Raymond P. Niro, Paul C. Gibbons, John C. Janka, Robert P. Greenspoon, Niro, Scavone, Haller & Niro, Eugene M. Cummings, David M. Mundt, Cook, Alex, McFarron, Manzo, Cummings & Mehler, Chicago, IL, John-Henry McKim Steele, Middlefield, CT, Kenneth A. Votre, Hurwitz, Cooper, Silverman & Votre, New Haven, CT, Michael S. Culver, Oliff & Berridge, Alexandria, VA, David J. Burke, Brian E. Moran, James M. Ruel, Robinson & Cole, Stamford, CT, Vincent J. Belusko, Robert S. McArthur, Eric Shih, Morrison & Foerster, Los Angeles, CA, Les J. Weinstein, Squire, Sanders, Dempsey, Los Angeles, CA, Richard J. Buturla, Robert L. Berchem, Berchem, Moses & Devlin, P.C., Milford, CT, Steven M. Pesner, Robert A. Johnson, Mira Helms Martinez, Akin, Gump, Strauss, Hauer & Feld, New York City, Adam Sheehan, Akin, Gump, Strauss, Hauer & Feld, Austin, TX, William M. Bloss, Alinor Clemans Sterling, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Thomas G. Gallatin, Jr., Latham & Watkins, New York City, Michael J. Shea, Larry S. Nixon, Jeffry H. Nelson, Nixon & Vanderhye, Arlington, VA, Robert W. Adams, U.S. Mickey Gill, Nixon & Vanderhye, Arlington, VA, Morton Amster, Michael J. Berger, Joseph M. Casino, John S. Economou, Abraham Kasdan, Amster, Rothstein & Ebenstein, New York City, for defendants.

*RULING ON SOUNDVIEW'S MOTION TO COMPEL FURTHER DOCUMENT PRODUCTION AND TESTIMONY OF SONY'S RULE 30(b)(6) WITNESS*

MARGOLIS, United States Magistrate Judge.

Familiarity is presumed with the factual and procedural history behind this antitrust and patent infringement action. *See Sony Elec., Inc. v. Soundview Techs., Inc.,* 157 F.Supp.2d 172 (D.Conn.2001); *Sony Elec., Inc. v. Soundview Techs., Inc.,* 157 F.Supp.2d 180 (D.Conn.2001); *Sony Elec., Inc. v. Soundview Techs., Inc.,* 157 F.Supp.2d 190 (D.Conn.2001). As outlined in this Magistrate's November 6, 2001 ruling, all fact discovery was to be completed by November 21, 2001, and all expert discovery was to be completed by February 1, 2002. (Dkt. # 347;

*see also* Dkt. # 324). All dispositive motions are to be filed by February 8, 2002. (Dkt.# 372). Trial is scheduled to commence on September 2, 2002. (Dkt. # 347; *see also* Dkt. # 323).

This ruling addresses one of two discovery motions presently pending before this Court. On November 6, 2001, Soundview filed, under seal, a Motion to Compel Further Document Production and Testimony of Sony's Rule 30(b)(6) Witness. (Dkt.## 344–45).[1] On December 10, 2001 Sony filed under seal its brief in opposition along with sixty-one documents withheld from Soundview on the basis of the joint defense privilege, for the Court's *in camera* review. (Dkt.# 359).[2] Defendant filed a reply brief on December 21, 2001. (Dkt.# 364).[3] For the reasons stated below. Soundview's Motion to Compel (Dkt.# 344) is *granted in part and denied in part.*

## I. DISCUSSION

This motion concerns Soundview's First Set of Document Requests, dated August 17, 2000, and Soundview's Rule 30(b)(6) Notice of Deposition, dated April 16, 2001. (Dkt. # 345, Exhs. B & G; Dkt. # 359, Exh. 12). Sony designated its in-house attorney, Jamie Siegel, Esq., to testify at the deposition. During this deposition Mr. Siegel asserted, on Sony's behalf, the attorney client privilege and the common defense ["joint defense"] privilege when questioned on Sony's involve-

ment in the conspiracy not to license the '584 patent. According to Soundview, when Mr. Siegel was later cross-examined by "friendly" counsel, Mr. Siegel answered the questions asked but again refused to answer follow-up questions asked on redirect. Another contentious issue arose when on the morning of the deposition. Sony produced a March 29, 1999 e-mail, which had been previously listed on Sony's Privilege Log, from Sony's then in-house counsel Christopher Tobin to Mr. Siegel. (Dkt. # 345, Exh. A; Dkt. # 359, Exh. 10).

In this motion, Soundview seeks an order compelling Sony to answer those deposition questions that Sony's Rule 30(b)(6) witness refused to answer concerning topics 6 and 7; allowing reasonable follow-up inquiry with regard to those deposition questions compelling production of documents responsive to Request Nos. 4, 6, 7, 30, 40 and 41 and compelling Sony to provide complete and unqualified Rule 30(b)(6) testimony either through Mr. Siegel or a properly-prepared witness. (Dkt. # 345, at 1–2).

Soundview argues that its motion to compel should be granted because Sony's refusal to answer Soundview's questions cannot be justified as no privilege existed or alternatively, if a privilege did exist, it was clearly waived by Sony's deliberate trial tactics; Sony's withholding of critical documents can-

1. Two tables and seven exhibits were attached to Soundview's brief in support which was filed under seal (Dkt.# 345); two lists of documents withheld by Sony under claim of privilege (Tables A & B); copy of Sony's March 23, 1999 e-mail to its in-house attorney (Exh. A); copy of Soundview's Joint Rule 30(b)(6) Notice of Deposition, dated April 16, 2001 (Exh. B); copy of Sony's Schedule of Documents Withheld from Production on the Basis of Attorney/Client Privilege and/or Work Product Immunity, dated June 8, 2001 (Exh. C); copy of deposition transcript of Jaime A. Siegel, Esq., taken on August 16, 2001 ["Siegel Dep. Tr."](Exh. D); Declaration of Robert Greenspoon in Support of Motion to Compel, dated November 5, 2001 (Exh. E); list of questions unanswered by Mr. Siegel on the basis of attorney-client privilege (Exh. F); and copy of Soundview's First Set of Document Requests, dated August 17, 2000 (Exh. G).

2. Twelve exhibits were attached: copies of case law (Exhs. 1, 5, 8 & 11); copies of letter from Gerald D. Hosier, Esq. to Sony and 34 other

prospective manufacturers of V-chip equipped television receivers, video recorders, cable set-top boxes and V-chip adapters, dated from April 30, 1998 to May 22, 1998 (Exhs.2–3); excerpts from deposition of Gerald D. Hosier, taken on November 12, 2001 ["Hosier Dep. Tr."](Exh. 4); copy of listing of documents submitted by Sony for *in camera* review (Exh. 6); excerpts from the Siegel deposition (Exh. 7); copy of Sony's response to Exhibit F of Soundview's Memorandum (Exh. 9); another copy of internal Sony e-mail communication, dated March 23, 2001 (Exh. 10); and another copy of Soundview's Joint Rule 30(b)(6) Notice of Deposition (Exh. 12).

The sixty-one documents have been filed under seal as Dkt. # 374.

3. Eleven exhibits were attached: copies of case law (Exh. A); copies of correspondence between Sony Corporation and Attorney Hosier, dating from April 30, 1998 through December 10, 1999 (Exhs.B–K).

not be justified in that privilege was either waived by Sony's deliberate trial tactics or is obviated based on the crime-fraud exception; and Mr. Siegel was unprepared to testify as a Rule 30(b)(6) witness on many issues upon which he was designated. (Dkt. # 344, at 1–2; Dkt. # 345, at 1–2).

Sony responds that its corporate representative either properly invoked privilege during the deposition or actually answered the specific questions at issue; that no privilege attached to the document Sony's representative produced at the deposition and thus there can be no waiver; the crime/fraud exception is inapplicable in this case; and that its Rule 30(b)(6) witness testified completely about facts known to Sony but could not provide facts about a conspiracy that they deny existed. (Dkt. # 359, at 1–2).

*A. Deposition Topics Nos. 6 & 7 and Document Request Nos. 4, 6, 7, 30 40, and 41*

Deposition Topic Nos. 6 and 7 seek facts pertaining to discussions between Sony and any third party regarding licensing of the '584 patent:

6. Events occurring at any meeting between Counterclaim Defendant and any other person at which Soundview Technologies or U.S. Patent No. B1 4,554,584 was discussed, whether under the auspices of any trade association or otherwise.

7. The nature of any negotiation, discussion, agreement, understanding or shared course of conduct arrived at between Counterclaim Defendant and any other person with respect to taking a license or other rights under U.S. Patent No. B1 4,554,584 or any other patent relating to video and/or audio blanking technology.

(Dkt. # 345, at 2–3 & Exh. B).

Similar to the Deposition Topics. Document Requests Nos. 4, 6, 7, 30, 40 and 41 also seek documents pertaining to the meetings with third parties that Sony engaged in or documents concerning any effort to license or not to license the '584 patent (Dkt. # 345, at 3):

4. All communications (letters, memoranda, telephone call notes, etc.) between Counterclaim Defendant and any other person mentioning Soundview Technologies or U.S. Patent No. 4,554,584 or B1 4,554,584.

6. All documents relating to any shared understanding, agreement, uniform course of conduct, contract, combination or conspiracy between Counterclaim Defendant and any other person concerning U.S. Patent No. 4,554,584 or B1 4,554,584, or Soundview Technologies.

7. All documents relating to licensing, or consideration of taking a license, under U.S. Patent No. 4,554,584 or B1 4,554,584.

30. All joint defense agreements between or among Counterclaim Defendants, as well as drafts.

40. Correspondence and/or communication among and between the Counterclaim Defendants, singly or in combination, or any other person relating to the Soundview Patent.

41. Correspondence and/or communication with third parties relating to the Soundview Patent or this litigation.

(Dkt. # 345, at 3 & Exh. G).

*1. Joint Defense Privilege*

Soundview considers Sony's reliance on the joint defense privilege unfounded because Sony never produced any actual joint defense agreement; Soundview points to Sony's burden to establish the agreement to prove that a valid joint defense privilege exists. (Dkt. # 345, at 14–15). In addition, Soundview alleges that this joint defense on Sony's part arose before there was any possibility of litigation, thus supporting Soundview's theory that Sony banded together with others to deal not with the possibility of litigation but to deal with Soundview's licensing offers. (Dkt. # 345, at 15). According to Soundview's count, forty-seven questions went unanswered based on the improper use of either the joint defense or attorney-client privileges.

Sony responds to Soundview's motion by asserting that Mr. Siegel actually answered many of the forty-seven questions Soundview alleges went unanswered and properly invoked privilege on the remaining questions. According to Sony, its joint defense effort

was entered into at least as early as 1998, when Mr. Gerald Hosier, an attorney acting on behalf of Soundview, sent letters to Sony and the other non-Soundview parties asserting that the '584 patent covers the V–Chip standard. (Dkt. # 359, at 4).

 The joint defense privilege is an "extension of the attorney client privilege" and "it serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989) (citations omitted). Where multiple clients share a common interest the common defense privilege arises. *See id.* There need not be actual litigation in progress in order for the common defense rule to apply. *See id.* at 244. "The test used to determine whether a plaintiff's apprehension of a lawsuit is reasonable is an objective one which focuses on whether the defendant's 'conduct rose to a level sufficient to indicate an intent to enforce its patent.'" *Studio Due, S.r.L. v. Vari–Lite, Inc.*, 2000 WL 977703, at *3 (S.D.N.Y. July 14, 2000) (citation omitted). To claim protection under the doctrine the parties "must show that they had a common legal, as opposed to commercial, interest, and that they cooperated in formulating a common legal strategy." *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y.1996) (citation omitted). The parties sharing the privilege "must have demonstrated cooperation in formulating a common legal strategy." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.* 160 F.R.D. 437, 447 (S.D.N.Y.1995).

 Although it is true, as stated by Soundview that there was no litigation to defend until April 2000, there was a "strong possibility of litigation" on the horizon for the period in which Sony asserts its joint defense privilege. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 689 F.Supp. 841, 844 (N.D.Ill.1988). Sony suggests that it was

Mr. Gerald Hosier's 1998 letters to Sony and the other non-Soundview parties that put the industry on notice that Soundview would enforce its patent.[4] (Dkt. # 359, at 4 & Exh. 3). Mr. Hosier's deposition testimony does nothing to contradict that suggestion when he avers "they knew I had substantial resources that I could afford litigation on behalf of [Soundview] and that I had no hesitation in pursuing it." (Hosier Dep. Tr. at 97). Although Soundview insists that its April 30, 1998 communication with Sony was not a litigation threat (*see* Dkt. # 345, at 15–16; Dkt. # 364, at 6–8) and Sony did not perceive it as such (*see* Dkt. # 364, at 8–10), the language of the letter speaks for itself. After discussing a limited-time offer of a non-exclusive license, the letter proceeds to speak of "willful infringement ... warrant[ing] award of treble damages and attorney fees." (Dkt. # 359, Exh. 2, at 2). In light of this language, the Court disagrees with Soundview's assertion that it only "invite[d] discussion" of its patent claim. (Dkt. # 364, at 6). While the April 30, 1998 letter opened the lines for license discussion, Soundview's language nevertheless made it clear that its patent would be enforced against potential infringers. Additionally, Sony, in its brief and the documents submitted for this Court's *in camera* review, has demonstrated cooperation among the non-Soundview parties in formulating a common legal strategy. (*See* Dkt. # 359, at 3–5, 15–16).

For these reasons, the Court finds that Sony may properly assert the joint defense privilege with regard to withholding testimony and documents involving discussions between Sony and third parties concerning the '584 patent.

### 2. Waiver of Attorney–Client Privilege

 Soundview's next argument is based on the voluntary production of the March 29, 1999 e-mail discussed *supra*. Soundview contends that production of this e-mail and subsequent attorney opinion testimony solicited by Sony on friendly cross-examination

---

4. Indeed, Attorney Hosier's letters in May 1998 to some Canadian and American corporations indicate that "[Soundview] is prepared to take appropriate legal action," (Dkt. # 359, Exh. 3, at

SVW 10887), and "[Soundview] intends to enforce its U.S. patents against manufacturers and sellers of infringing Tri–Vision products in this country." (*Id.* at 11859 & 11860).

expressly waived the issue regarding "collectively bargaining with patent holders to negotiate a license." (Dkt. # 345, at 1 & 3). Sony replies that no privilege attaches to this document or the testimony and therefore there can be no waiver. (Dkt. # 359, at 1).

The e-mail document at issue here is designated on its face as "confidential attorney-client privilege communication" and it was listed on Sony's June 8, 2001 Schedule of Documents Withheld from Production. (Dkt. # 345, Exhs. A & C; Dkt. # 359, Exh. 10). Soundview claims that the e-mail from Christopher Tobin contained confidential communications within Sony concerning the CEMA meetings "collectively bargaining with patent holders to negotiate a license" and "particularly antitrust concerns" (Dkt. # 345, at 10) and that it was only recently produced "because Sony thought the memo could bolster its defense." (*Id.* at 10–11).

Sony classifies the document as a report between two attorneys about what happened at a public meeting and notes that the e-mail does not include any privileged information; according to Sony, the mere placement of the "confidential attorney-client privilege communication" notice does not make the document privileged. (Dkt. # 359, at 13). It appears that Sony has overlooked the fact that it had originally placed the document on its Schedule of Documents Withheld from Production. Nonetheless, the Court has reviewed the disputed e-mail and finds, for the reasons outlined in Sony's brief, that it is not privileged and thus, there is no waiver of privilege with respect to the document. An *in camera* review of the five remaining documents for which Sony claims privilege listed in Table B of Soundview's memorandum yields the same result— the five documents are privileged.

Next addressed is Soundview's claim that during the Rule 30(b)(6) deposition, Sony's witness, Mr. Siegel, did not answer forty-seven questions on the basis of attorney-client privilege. (Dkt. # 345, at 1, 4–8, 13). Soundview asks the Court to order Sony to answer each question, including an opportunity for reasonable follow-up inquiry. (Dkt. # 345, at 13). It is Soundview's position that once Sony unilaterally designated Mr. Siegel

as its Rule 30(b)(6) witness. "Mr. Siegel was obligated to testify about **all knowledge of Sony**, regardless of who collected the information." (Dkt. # 345, at 7)(emphasis in original). Soundview contends that Sony's designation of Mr. Siegel as its Rule 30(b)(6) witness waived privilege regarding any information he learned in his investigation, and therefore Sony should be precluded from withholding any information simply because Mr. Siegel is a lawyer. (Dkt. # 345, at 7). Additionally, Soundview claims that Sony waived what little attorney-client privilege attached to its communications with the non-Soundview parties when Mr. Siegel opened the door during "friendly" examination claiming that he had made a detailed investigation of the Rule 30(b)(6) topics and found that Sony did not participate in a conspiracy to refuse to license under the Soundview patent. (Dkt. # 345, at 8–10, 11–13).

As to be expected, Sony denies that Mr. Siegel improperly hid behind the attorney-client privilege and that he improperly used privilege as a sword and shield during the deposition. Sony contests Soundview's assertion that it waived its attorney-client privilege by designating a lawyer as its Rule 30(b)(6) witness and contends that the questions Soundview claims went unanswered did not call for purely factual information within the corporate knowledge, which must be answered by an attorney witness, but called for Mr. Siegel to disclose legal advice of counsel which is privileged. (Dkt. # 359, at 9–10). Sony also rebuts Soundview's contention that it waived privilege based on testimony of Mr. Siegel elicited during friendly examination. (Dkt. # 359, at 10–11). Sony points out that Soundview's follow-up questions had nothing to do with the witness' preparation for the deposition: instead the follow-up questions sought testimony about conversations Mr. Siegel had with other in-house counsel regarding the Soundview patent. (Dkt. # 359, at 11–12).

■ When general counsel is designated by a party as one of its Rule 30(b)(6) witnesses the witness is required to testify about the business operations of the corporation to the extent he is knowledgeable about the operations, irrespective of the fact that

he also serves as legal advisor for the corporation. *See Primetime 24 Joint Venture v. Echostar Communications Corp.*, 2000 WL 97680, at *2, 2000 U.S. Dist. LEXIS 779, at *6 n. 2 (S.D.N.Y. Jan. 28, 2000) (citations omitted) Questions posed which elicit purely factual information that is now in the possession of corporate officials and do not ask for the substance of communications between counsel and client are to be answered as the answers to these inquiries will not be disclosing legal advice of counsel. *See id.* at *6.

Sony's brief in opposition accounts for all forty-seven questions claimed by Soundview as unanswered indicating those that were replied to at some point during the deposition, and for the remaining unanswered questions, the privilege it asserts with regard to the specific unanswered questions. (Dkt. # 345, Exh. F; Dkt. # 359, Exh. 9). The Court has reviewed each remaining "unanswered" questions and finds that Siegel adequately answered such questions, or that Sony properly asserted either the attorney-client privilege and/or the joint defense privilege.

■ The next area of dispute centers around two deposition questions asked of Mr. Siegel by Sony's counsel and two follow-up questions posed by Soundview's counsel:

Q. Now, Mr. Siegel, as corporate representative today and based on your personal knowledge and the knowledge that you've gained through your investigations for this deposition, did Sony Electronics or Sony [C]orporation of America participate in a conspiracy with others fixing or otherwise agreeing on an amount of royalties to be paid for licenses for patents related to V-chips?

A. No, they did not.

* * * * * *

Q. Based on your personal knowledge and the facts you learned through your investigations, did Sony Electronics. Inc. or Sony Corporation participate in a conspiracy with others to injur[e] Soundview in any way?

A. No, they did not.

(Siegel Dep. Tr. at 233–34). The two follow-up questions asked by Soundview's counsel on redirect that Mr. Siegel refused to answer on privilege grounds were:

Q. Now, have you had any conversations with any in-house counsel from any television manufacturer other than a Sony entity on the subject matter of the SoundView patent?

MR. GRESALFI: Mr. Siegel, to the extent that this answer would call for privileged communications, I instruct you not to answer, but to the extent that you had nonprivileged communications you may answer.

* * * * * *

A. I'll follow my attorney's instruction.

Q. Have you had any conversation with any in-house counsel of another television manufacturer other than a Sony entity on the subject of licenses under the Soundview patent?

MR. GRESALFI: The same instruction.

A. I'll follow the advice of my counsel.

(*Id.* at 238).

With the first two questions, characterized by Soundview as attorney-opinion testimony, asked and answered during friendly examination, Soundview contends that Mr. Siegel disclosed his opinion on Sony's concerted effort not to license the '584 patent. With Sony's reliance on a portion of counsel's opinion, Soundview asserts that Sony waived its privilege with respect to all opinions and evidence on the same subject matter. (Dkt. # 345, at 11–12). Soundview notes that once the door was opened "Mr. Siegel *must* testify regarding his **'personal knowledge and the knowledge that [he] gained through [his] investigation for this deposition'** and **'the facts [he] learned through [his] investigations.'**" (Dkt. # 345, at 8–9)(emphasis in original).

Sony argues that the questions asked during friendly examination relate to investigations Siegel made in preparing for the deposition as well as his personal knowledge (Dkt. # 359, at 11–12). As such, Sony contends that the questions do not seek responses containing the substance of attorney-client privileged communications. (*Id.*).

The Court has reviewed the Mr. Siegel's deposition testimony discussed *supra* and those portions of the transcript referred to in the briefs (Dkt. # 359, Exh. 7 at 19–27), and finds that Mr. Siegel did not waive any privilege based on testimony elicited during friendly examination. The questions asked on redirect sought testimony covered by the joint defense privilege which had nothing to do with Mr. Siegel's preparation for his deposition testimony.

### 3. In Camera Review of Documents

Soundview's motion lists documents it claims Sony withheld improperly on the basis of privilege. (Dkt. # 345, Tables A & B). Sony has submitted these documents to the court for its *in camera* review. (Dkt. # 359, at 4–5). As discussed in Section I.A.2. *supra,* five documents from Table B are privileged and the remaining two documents have already been disclosed to Soundview. After careful review of the documents listed in Table A, the Court finds that Sony cannot claim privilege over certain portions of the fifteen documents listed below; however, Sony may redact any confidential legends thereon (including fax information) and need not produce any documents which have been previously produced to Soundview by other non-Soundview parties:

Tab # 22—copies of attachments pertaining to German patent.

Tab # 23—copies of attachments pertaining to German patent.

Tab # 28—copies of correspondence with Attorney Hosier;

Tab # 33—copies of correspondence with Attorney Hosier;

Tab # 44—copies of correspondence with Attorney Hosier;

Tab # 46—copies of correspondence with Attorney Hosier;

Tab # 47—copies of correspondence with Attorney Hosier;

Tab # 48—copies of correspondence with Attorney Hosier;

Tab # 49—copy of press release;

Tab # 50—copies of correspondence with Attorney Hosier (without Japanese letter);

Tab # 52—copies of correspondence with Attorney Hosier;

Tab # 53—copies of correspondence with Attorney Hosier;

Tab # 54—copies of correspondence with Attorney Hosier;

Tab # 55—copies of correspondence with Attorney Hosier; and

Tab # 58—copies of correspondence with Attorney Hosier.

Sony shall provide copies of the above-mentioned items to Soundview **on or before February 22, 2002.**

In addition, while the other documents were apparent on their face, the Magistrate Judge lacks sufficient knowledge regarding the attachments to Tab # 21, such as the author of the memorandum, the date of the memorandum, the relationship of the author to Sony, and the circumstances under which the memorandum was prepared. Sony shall forward an *ex parte* letter to the Magistrate Judge **on or before February 15, 2002,** which provides this information and any additional information which may be helpful to an informed understanding of Tab # 21.

Accordingly, Soundview's motion to disclose documents is *granted to the extent set forth above and is denied in large part.*

### B. Mr. Siegel's Preparation as a Rule 30(b)(6) Witness

In addition to claiming that privilege was improperly asserted, Soundview also maintains that Mr. Siegel was neither knowledgeable nor prepared to testify as required of a Rule 30(b)(6) witness. (Dkt. # 345, at 1–2, 16–19). Soundview contends that Mr. Siegel's refusal to take a position on behalf of Sony on self-evident matters such as whether a Sony employee actually attended a meeting in which that person is listed in attendance on the official minutes demonstrates an evasiveness contrary to the spirit, if not the letter, of Rule 30(b)(6). (Dkt. # 345, at 19). Soundview requests the Court to compel Sony to provide complete and unqualified Rule 30(b)(6) testimony either through Mr. Siegel or a properly-prepared witness. (Dkt. # 345, at 2).

Sony indicates that it produced three corporate witnesses in an effort to provide the best sources of corporate information on the 12 different topics listed in Soundview's Rule 30(b)(6) notice.[5] (Dkt. # 359, at 17). Sony contests Soundview's contention that Mr. Siegel was unprepared indicating that Mr. Siegel testified based on his own personal knowledge plus the knowledge he gained by interviewing other knowledgeable individuals and that Mr. Siegel cannot be blamed if neither he nor the corporation he testifies for has an answer to a question asked. (Dkt. # 359, at 18). Furthermore, Sony notes that although Mr. Siegel testified completely about facts known to Sony, he was unable to provide facts about the alleged conspiracy in that there was no conspiracy upon which he could testify. (Dkt. # 359, at 2 & 17–18).

■ According to Rule 30(b)(6):

[A] party may ... name as the deponent ... a ... corporation ... and describe with reasonable particularity the matters on which examination is requested.... The persons so designated shall testify as to matters known or reasonably available to the organization."

"Pursuant to Rule 30(b)(6), the deponent 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters.'" *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y.1997) (citations omitted). Under Rule 30(b)(6), "the corporation being deposed must designate persons having knowledge of the subject areas identified by the discovering party and 'prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.'" *Gucci America, Inc. v. Costco Cos. Inc.*, 2000 WL 60209, at *3 (S.D.N.Y. Jan.24, 2000) (citations omitted). If it becomes obvious that Sony's designee is deficient, Sony is obligated to provide a substitute. *See Dravo*

*Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D.Neb.1995) (citation omitted).

■ The transcript provided to the Court of Mr. Siegel's deposition testimony reveals gaps in his knowledge as well as evasive (and at times obnoxious) answers regarding specific topics included in Soundview's Rule 30(b)(6) notice that are not subject to the joint defense or attorney client privilege discussed in Sections I.A.1. & 2 *infra*. Though Mr. Siegel may have been unable to testify on an alleged conspiracy, as Sony contends, he should be able to provide answers to questions that were reasonably available to Sony on the noticed topics. Soundview's Rule 30(b)(6) notice sufficiently informed Sony of the matters to be inquired into at the deposition allowing Sony to determine the identity a person whose presence will provide adequate responses to Soundview's potential questions. Sony shall produce another Rule 30(b)(6) witness, such deposition to be completed *on or before March 8, 2002*.

### C. Crime Fraud Exception

An additional basis for Soundview's motion to compel is application of the crime-fraud exception. According to Soundview, this exception to the attorney-client privilege obviates any privilege that may have attached and Soundview only need establish a prima facie likelihood that a Sherman Act conspiracy existed. (Dkt. # 345, at 14). Soundview relies on the Court's previous denial of Sony's motion to dismiss the antitrust counts to satisfy its prima facie case. (*Id.; see also* 157 F.Supp.2d 180; Dkt. # 159). Additionally, Soundview points to Sony's privilege log, and its identification of dozens of documents relating to the joint defense agreement, to bolster its reliance on the crime-fraud exception. (Dkt. # 345, at 14).

■ "It is well-established that communications that otherwise would be protected by the attorney-client privilege ... are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In*

---

5. Mr. Siegel was designated to testify on Deposition Topic Nos. 5, 6, 7 & 11. (Siegel Dep. Tr. at 7–8).

*re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038 (2d Cir.1984) (citations omitted). Proof beyond a reasonable doubt that a crime or fraud has been committed is not required by courts. *See In re Sealed Case.* 676 F.2d 793, 814 (D.C.Cir.1982). Mere allegations of a crime or fraud cannot defeat a claim of privilege; prima facie evidence that the crime or fraud has some foundation in fact is required to invoke the exception. *See id.* at 815 n. 84 (citation omitted).

■ The Court disagrees with Soundview's assertion that the Court's denial of Sony's motion to dismiss the antitrust counts constitutes prima facie evidence of a crime. In that decision, U.S. District Judge Janet Bond Arterton concluded that Soundview's counterclaim adequately alleges the elements of an antitrust claim. (157 F.Supp.2d at 188 & 190; Dkt. # 289, at 20 & 23). It does not "establish a prima facie likelihood that ... a conspiracy exists." (Dkt. # 345, at 14). Also, as discussed in Section I.A. *supra,* Sony may properly assert the joint defense privilege, and the listing of documents relating to such does not demonstrate the prima facie existence of a crime.

## II. CONCLUSION

Accordingly, for the reasons stated above, Soundview's Motion to Compel (Dkt.# 344) is *granted in part and denied in part* as follows: Soundview's motion is *denied* with respect to Soundview seeking an order compelling Sony to answer the forty-seven questions Sony's witness refused to answer along with reasonable follow-up; Soundview's motion is *granted* with respect to Soundview requiring Sony to produce another Rule 30(b)(6) witness to answer those questions left unanswered by Sony's witness which are not subject to the joint defense or attorney client privilege as outlined in Section I.B. *supra,* and Soundview's motion is *granted in part* with respect to Soundview seeking an order compelling production of documents responsive to request nos. 4, 6, 7, 30, 40, and 41 limited to those documents identified in Section I.A.3. *supra* as not subject to privilege. Sony shall produce these documents *on or before February 22, 2002* and

the deposition shall be completed *on or before March 8, 2002.*

This is not a Recommended Ruling but a Ruling on discovery, the standard of review which is specified in 28 U.S.C. § 636 FED. R. CIV. P 6(a), 6(e), & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

*See* 28 U.S.C. § 636(b)(**written objections to ruling must be filed within ten days after service of same**); F.R. Civ. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir.1989)(**failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit**).